EDGAR O. DURFEE, JUDGE OF PROBATE, FOR THE USE OF
KATE LANTZ, v. WILLIAM W. ABBOTT AND
ALEXANDER D. FOWLER.

61  471
63  735
64  674

*Legacy—Extension of time of payment by adult legatee—Releases sureties of
residuary legatee, unless made with their consent—Such extension by infant
legatee will not have like effect, unless ratified after attaining his majority
—Evidence—Of age by church record of baptism—If received without
objection, cannot be assailed as incompetent in appellate court—Identity of
parties must be shown—And this is a question for the jury—Such record,
when admissible, is evidence of date of baptism, but not of birth—If infant
legatee retains note, received in payment of legacy, after arriving at full
age—And in suit on residuary legatee's bond his sureties' claim to be
released thereby—Real question is as to ratification by infant of original
arrangement—Such ratification will relate back to time note was taken
and discharge sureties—Ratification always a question of intent—If no
express ratification of infant's act is shown—Or act done in reliance upon
or in affirmation of the contract for extension—Delay in enforcing claim
against sureties on bond will not amount to such ratification, if no ele-
ments of estoppel intervene—Executed contract—Confirmation of—Ques-
tion as to what acts will amount to, one of intention—And should be sub-
mitted to the jury.*

1. An extension of the time for the payment of a *matured* legacy, by a
legatee of *full* age, by accepting the note of the executor therefor
payable at a future date, releases the sureties on the bond of a resid-
uary legatee, unless such extension is granted with their consent.
Such action by an *infant* legatee is not binding on him, and will not
release such sureties, unless ratified by him after arriving at *full* age.

2. Where a church record was offered and received in evidence, without
objection, for the purpose of establishing the *age* of a party, objec-
tions to its competency, made for the first time in the appellate
court, will not be considered. In such a case proof of the *identity* of
the parties is essential, and it is *error* to refuse to submit *that* question
to the jury.

3. A church record of baptism, when admissible in evidence, is evidence
of the *date* of the *baptism*, but not of the *birth*, of the party baptized,
though stated therein.

4. Where an infant *legatee* accepts the note of the executor in payment
of a legacy *then* due and payable, thereby extending the time for
payment, and holds the note after attaining her majority,—
   *Held*, in a suit brought on the residuary legatee's bond, in which

the sureties claimed to be released from liability by such extension, that the real question was as to the *ratification* by the infant of the arrangement by which the note was given *after* she arrived at *full* age, which ratification, if made, would relate back to the date of the giving of the note, and so affect the undertaking of the sureties as to discharge them from liability.

5. Ratification always resolves itself into a question of *intent*, and where no *express* ratification is shown of the action of an infant legatee in extending the time for the payment of a *matured* legacy, and no act done in reliance upon or in affirmance of the contract by which such extension was made, mere *delay* in enforcing the infant's claim against the sureties on the residuary legatee's bond cannot be construed into such ratification, where no elements of estoppel intervene, especially where the infant receives no *new* consideration nor retains *any* arising out of the *original* transaction.

6. While it has been held that in order to confirm an *executed* contract it is only necessary to show a *distinct* acknowledgment or act indicating an intention to be bound thereby, and that if an infant, after attaining his majority, continues to occupy a position only explicable on the supposition that he intends to stand by *such* a contract he will be considered as having ratified the same, still the question as to what acts will or will not amount to a confirmation is one of *intention*, proper to be submitted to and determined by a jury under proper instructions from the court.

Error to Wayne. (Jennison, J.)    Argued April 22, 1886. Decided June 10, 1886.

Debt.    Defendants bring error.    Reversed.    The facts are stated in the opinion.

*Alex. D. Fowler*, for appellants:

As to admissibility of record of baptism as evidence and its conclusiveness, cited:    *Huntly v. Comstock*, 2 Root (Conn.) 99; *Jacocks v. Gilliam*, 3 Murphy (N. C.) 47; *Lewis v. Marshall*, 5 Peters, 475; *Kingston v. Lesley*, 10 Serg. & R. 383; *Jackson v. King*, 5 Cowen, 237; *Sumner v. Sebec*, 3 Greenl. (Me.) 223; *Whitcher v. McLaughlin*, 115 Mass. 157; *Kennedy v. Doyle*, 10 Allen, 161.

*Fraser & Gates*, for plaintiff:

Private records are not evidence unless the maker is called as a witness or his death shown:    *Wilbur v. Selden*, 6 Cow. 162; *Merrill v. Ithaca, &c., R. R. Co.*, 16 Wend. 586; *Brew-*

*ster v. Doane,* 2 Hill, 537 ; *Jackson v. Evans,* 8 Mich. 476.

The keeping of the note by plaintiff was not a ratification of the original transaction by which she obtained it. She must either receive a *direct* benefit or ratify the contract in *express* terms: *Smith v. Mayo,* 9 Mass. 62; *Tucker v. Moreland,* 10 Pet. 75–6; *Minock v. Shortridge,* 21 Mich. 304; *Prout v. Wiley,* 28 Id. 164–7; *Corey v. Burton,* 32 Id. 30.

CHAMPLIN, J.   This suit is brought upon a residuary legatee's bond to recover a legacy given by the last will and testament of John T. McKeown, deceased, to Kate Lantz.

The case was before this Court at the April term, 1883, and is reported in 50 Mich. 479.   Sophia Lantz, who was one of the legatees for whose use the suit was then prosecuted, has since dropped out of the case as a party interested. Under the facts, as they appeared in the record before the Court, she had no right to recover.

It appeared, as it now appears, that on October 20, 1877, the executor gave to these legatees his individual notes for the legacies, payable to them two years from that date, with interest.   The legacies were payable when the notes were given, and they signed and gave to the executor receipts stating that they had received from the executor of the estate of John T. McKeown, deceased, $250, being the legacy bequeathed them, respectively.

It was held that, by this extension of the time of payment without the sureties' assent, they were discharged from liability.   But it also appeared that Kate Lantz was not 21 years of age at the time the note to her was given, and therefore she stood in a different position ; that she had no power to extend the time for payment, and she did not become of age until after the note given her became due, and unless she did some act, after she came of age, extending the time, or in some other way changing McKeown's liability, she is not barred of her action ; and, inasmuch as the note in her hands was past due when she came of age, the time was not extended by her retaining the note, and that it should not be held as payment unless so treated in fact.

It will readily be seen that the contest upon the retrial centered upon the question of the age of Kate Lantz.

On the part of the plaintiff, Kate Lantz testified that she was born November 5, 1858, and that her full name is Catherine Sophia Barbara Lantz; that her father's name is Jacob Lantz, and her mother's Barbara Lantz; and that her parents lived on Clinton street, in Detroit, when she was born.

Sophia Smith, a sister, testified that Kate was born in 1858. Caroline M. Lantz, another sister, testified that Kate was born in 1858, and that her birthday was November 5. She stated that she had seen the entry in the family record made in the family Bible, and had last seen it seven or eight years ago; that the entry read, "Sophia Catherine Barbara Lantz, born 1858;" that the record of her own birth was entered there, and read, "Caroline Matilda Lantz, born in 1856;" and that the entry of the birth of Sophia read, "Sophia Catherine Lantz, 1849."

Mrs. Barbara Lantz, the mother, was sworn for plaintiff, and testified that her age was 65, and was not able to remember the age of her daughters except the eldest; that they had a family record in the Bible, but her husband took it away with him, and she had not seen it since. She states that she was married in 1849, and four of her children were baptized on Clinton street, by the pastor of the German Lutheran Church on Monroe avenue; that Kate was baptized by the name of Catherine Sophia Barbara Lantz. She first stated that the minister's name was Herman who baptized all four of the children, but afterwards recalled the fact that one was baptized by a minister by the name of Miller, of the Monroe Avenue Church; that she was present when Kate was baptized, as was also Peter Lantz, his wife, Sophia Lantz, and Catherine Schelard.

The defendants, on their part, produced Charles Haas, the pastor of the German Lutheran Church, who testified who were pastors of the church from 1852 to 1862, among whom was Rev. Mr. Miller. He also produced and proved the church records of baptism from 1852, and since, which record showed the "baptism of Catherine Sophia

Barbara Lantz, daughter of Jacob and Barbara Lantz, born
the eighteenth day of November, 1856, and baptized the fif-
teenth day of March, 1857. The witnesses were Sophia
Lantz, Catherine Schelard, and Peter Lantz." This entry
the witness testified was in the handwriting of Herman
Miller, who was pastor of the church at that time. The
entry appears in the regular order of dates. One date fol-
lows another in regular order, and the entries are numbered
consecutively, and the number of the entry read was No. 28,
and appears under date of March 15, 1857; the prior date
being March 8, and the subsequent date being March 19,
1857. The witness testified that these records belong to the
church, and that he has been its pastor since 1862. There
was some evidence introduced showing what Kate Lantz
and Sophia, her sister, testified about Kate's age upon that
trial, to the effect that she was born in November, 1857.

This record respecting the baptism of Catherine Sophia
Barbara Lantz was admitted in evidence without objection.
It is too late now for counsel for plaintiff to claim that it
was incompetent evidence, or that it was necessary to show
that Mr. Miller was dead before it could be received.

It was necessary, however, that the defendants should prove
the identity of the person baptized as Catherine Sophia
Barbara Lantz with the legatee known as Kate Lantz, and
it was necessary for the jury to be convinced of that fact.
It was therefore error for the court to refuse to submit to
the jury the special question, as follows:

"Is the 'Catherine Sophia Barbara Lantz' named in the
records of baptism produced by Rev. Charles Haas, as
having been 'born November 18, 1856, and baptized on
March 15, 1857,' the same person who prosecutes this suit as
plaintiff, and who swears that her full name is Catherine
Sophia Barbara Lantz?" *Draycott v. Draycott*, 12 Vin. Abr.
89 ; *Birt v. Barlow*, 1 Doug. (King's Bench) 170.

Error is assigned upon the refusal of the court to charge
the jury that, if they believed that the record of baptism is
true, their verdict must be for the defendants. The court
charged that the record was not conclusive evidence of the

facts appearing in it, but it was evidence to go to the jury under all the circumstances, and it was for them to give to it what weight they saw fit; and, after considering all the facts, if they believed the record of the minister was true, it would show the girl was of age, and therefore the plaintiff could not recover. We do not think the defendants can complain of this instruction.

The record of a baptism, when admissible in evidence, is evidence of the date of baptism, but not of birth, although stated therein: *Wihen v. Law*, 3 Starkie, 63; *Duins v. Donovan*, 3 Hagg. Ecc. 301; *Burghart v. Angerstein*, 6 Car. & P. 690; *Rex v. Clapham*, 4 Car. & P. 29; *Rex v. North Petherton*, 5 Barn. & C. 508; and the date of baptism was equally as important to defendants as that of the birth; for, if she was the person baptized on the fifteenth of March, 1857, she would be 21 years of age before the note matured in October, 1879.

Defendants' counsel also requested the court to charge the jury that if they found from the evidence that Kate Lantz gave John McKeown, executor of the estate of John T. McKeown, a receipt dated October 20, 1877, for her legacy, and at or about the same time received his individual note for said legacy payable October 20, 1879, and kept said note two years after she became of age, this was such an extension of time, without the consent of the sureties on McKeown's bond, as would discharge them from all liability; and their verdict must be for the defendants, Abbott and Fowler. And he further requested the court to charge that when a minor holds a note a long time after she becomes of age, and does not disaffirm the contract, she being the active party, she is considered in law as ratifying the contract; and also that, if the jury should find that Kate Lantz became of age before the note became due (October 20, 1879), they must find for the defendants, Abbott and Fowler, and in that case it did not matter when the note was given.

These requests do not state the correct principles of law to be applied to the facts of this case. Under any view of the testimony, Kate Lantz was not of full age when the note was

made and the receipt given. She was then incapable of giving such binding assent to an extension of time as would discharge the sureties, or of receiving the individual note of the executor in absolute payment of the legacy. The question, therefore, is, did she, after she became of age, ratify the arrangement by which the note was given ? If she did, the ratification would relate back to the time of the transaction, and so affect the undertaking of the sureties as to discharge them from liability.

Ratification always resolves itself into a question of intention. The question, therefore, for the jury to determine was whether the facts were such as to justify an inference, properly to be drawn from them, of an intent on the part of Kate Lantz to ratify the reception of the note as payment of her legacy.

Where no express ratification is shown, and no act done in reliance upon or in affirmance of the contract entered into by an infant, mere delay in proceeding to enforce her claim against the sureties cannot be construed into a ratification where there are no elements of estoppel that intervene; especially where the infant has not received any new consideration nor retains any consideration arising out of the original transaction. In this case McKeown's note did not give her any greater right of action against him than she had before. She was relinquishing a security which she had under the bond against the sureties, and receiving in its stead a negotiable note in which the day of payment was deferred. This, perhaps, would have been a sufficient consideration between parties capable of contracting; and, had she been of age, it certainly would have been sufficient to discharge the sureties in the bond, if made without their assent or approval.

There is some testimony from which the knowledge, if not the assent, of at least one of the sureties might be inferred. It was proven that both the receipt and note were in the handwriting of one of the sureties, but, as this point was not made prominent, and was not relied upon, it need not be discussed now.

So far as the contract which was made between McKeown, the executor, and Kate Lantz affected the residuary legatee's bond, it was an executed contract, and it has been held that, in order to confirm an executed contract of an infant, all that appears to be necessary is to show any distinct acknowledgment or act indicating an intention to be bound by the contract; and if the infant continues, after coming of full age, to occupy a position which is only explicable upon the supposition that he intends to stand by his contract, it will be considered as a ratification of an executed contract. 1 Story, Cont. (4th ed.) §§ 69, 72; Tyler, Inf. & Cov. §§ 40, 41; *Norris v. Vance*, 3 Rich. Law, 168. But, whether the contract be executed or executory, the question as to what acts will or will not amount to a confirmation is one of intention, and is one proper to be submitted to and determined by a jury under proper instructions from the court.

The judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., and SHERWOOD, J., concurred. MORSE, J., did not sit.