MARIAN HUNT v. THE SUPREME COUNCIL OF THE ORDER OF CHOSEN FRIENDS.

*Mutual benefit associations—Forfeiture of certificate—Documentary evidence—Leaf from soldier's record-book—Church record of baptism—Submission of facts to jury.*

1. A leaf taken from a soldier's private record-book, after his death, required to be kept by soldiers in the British service, containing the names of the soldier and his wife, and the names, ages, and places of birth of all his children, on a printed form designed for uniform army use, is competent evidence to prove the ages of the children; and such removal in no way derogates from its authenticity, so long as it is traced and explained.

2. The rule laid down in England, and followed until recent times, which recognized none but registers and similar records of churches of the established religion, has been abrogated there by statute, so as to open the door to many other records which all churches keep, and which are quite as likely to be accurate as those of an established church. These records serve a purpose equivalent to that served by family records. In this country they are fairly to be dealt with as equivalent to corporation records, which are generally evidence of such matters as are recorded in the usual course of affairs.

So *held*, where the recitation of the age of a deceased beneficiary in a mutual benefit association, as stated in the application for membership, was sought to be impeached by a sworn and examined extract from the parish record of the Catholic church at Amherstburg, in Ontario, which showed the date of her baptism and the names of her parents, with the description of her father as a soldier, and stated the date of her birth, and was accompanied by evidence that such record was required by the rules of the church to be kept, which record was more than thirty years old.

3. A court cannot properly submit to a jury facts on which the testimony is all one way.

Error to Wayne. (Jennison, J.)   Argued January 19, 1887.   Decided February 3, 1887.

Assumpsit. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

64 671
90 125

64 671
103 188

64 671
106 444

64 671
114 182

64 671
118 488

64 671
125 310

64 671
f151 [3] 39

64 671
145 [2] 35

*Haug & Springer* (*Edwin F. Conely*, of counsel), for appellant.

*George S. Hosmer*, for defendant.

CAMPBELL, C. J.   Plaintiff sued as beneficiary named in a benefit association certificate issued to one Maggie Gibbons in April, 1883 ; the amount having, as claimed, become due on the death of the person who became a member when the certificate issued.   The defense rested chiefly on two grounds,— one being that plaintiff was not so related to the decedent as to be entitled to take the benefit, and the other that the deceased, on securing membership, misrepresented her age by about 10 years.   The court below directed a verdict for defendant.

The company sued was not organized under the laws of Michigan, and we have no means from the record of knowing whether the restrictions put by our laws on the relationship of the members and beneficiaries exist in the state of Indiana, where the company was formed.   As the certificate is payable to plaintiff, and as no particular stress seems to have been laid on this point below or here, we need not consider it.[1]

It is evident from the terms of membership that the age of applicants is regarded as very material, and misrepresentation is made ground of forfeiture.   It not only changes the actual risk, but the membership dues are measured by it, so as to make a difference of several per cent. between the age of the deceased as shown by the testimony, and her age as represented to the defendant.   This was the basis of the decision below.

It was shown, without contradiction, if the testimony was admissible, that decedent was born December 14, 1842, and was therefore between 40 and 41 years old when she became a member of the defendant company.   Her application

---

[1] See *Sup. Lodge Knights of Honor v. Nairn*, 60 Mich. 44.

represented that she was a little over 32. The difference of just eight years is very great, and one which cannot be accounted for by any theory that would save the membership. The representation was a warranty, and it was also very material.

The age of decedent was not shown by plaintiff at all, and by defendant was proved by three distinct pieces of testimony. The first was a sworn and examined extract from the parish record of the Catholic church at Amherstburg, Ontario, which showed her baptism in the latter part of December, 1842; reciting the names of her parents, with the description of her father as a soldier, and a statement of her age as born December 14, 1842. The priest swore this record was required by the rules of the church to be kept. It was more than 30 years old.

Another document was a leaf sworn to as taken, after his death, from the soldier's private record-book required to be kept by soldiers in the British service, containing the names of the father and his wife, and the names, ages, and places of birth of all his children. In that record the description of decedent exactly corresponds with the parish record. This leaf was sworn to by an older sister of decedent, who removed it from the book after her father's death in order to preserve the *memoranda.*

This sister also swore to the age of decedent, by reference to her own age as several years the elder of the deceased.

Deceased was fully identified as the daughter of her parents and sister of the witness, in whose name the policy was first made out, and who paid several of the assessments.

It was objected, however, that these documents should not have been received. So far as the family memorandum is concerned, there is no authority against its reception. It was precisely like the entries in a family Bible, or other family book used for keeping family minutes. The use of such

64 MICH.—43.

things is almost universal, and it would generally be difficult, if not impossible, to prove relationships and ages without them. It in no way derogates from authenticity that it has been torn out of the book which originally held it, so long as it was traced and explained. It is on a printed form evidently designed for uniform army use, and it was kept by the father of deceased, so long as he lived, for the purposes mentioned.

There is no reason why the parish register should not be received and credited. The rule laid down in England, and followed until recent times, which recognized none but registers and similar records of churches of the established religion, has been abrogated there by statute, so as to open the door to many other records which all churches keep, and which are quite as likely to be accurate as those of an established church. Those registers serve a purpose equivalent to that served by family records. In this country they are fairly to be dealt with as equivalent to corporation records, which are generally evidence of such matters as are recorded in the usual course of affairs. There is not much authority on the subject here, but all the analogies and reasons which apply to other presumptively correct documents apply to these. In this State, while it has not been definitely decided by any reported decision of this Court, it has been universal practice to receive such entries and papers as reliable evidence. In *Hutchins v. Kimmell*, 31 Mich. 126, a marriage was proved in that way; and in *Durfee v. Abbott*, 61 Mich. 471, recently decided by this Court, in a case sharply contested, the records of a Lutheran church in Detroit, showing the baptism of one of the parties, were resorted to, and practically disposed of a main issue in the case, being regarded as proof of the time of baptism, although not of the age, of the infant as there set out. The person described as being baptized is thereby indentified as in being at that date.

The question was decided in favor of such entries in an

early case in the Supreme Court of the United States, where the entries of burial in a church in Philadelphia were held admissible in a land controversy in Kentucky, tried in one of the courts of the United States. It was there held expressly that they were competent testimony. *Lewis v. Marshall*, 5 Pet. 470.

There is no more reason to suppose these entries will be incorrect or falsified than any other. Fraud is possible anywhere; but it cannot be presumed in records of churches any more than in any other documents preserved for similar purposes. The rejection of such proofs would be disastrous. They are relied on by the whole community.

If anything had been introduced to contradict these facts shown by the documents, and by the testimony of the sister of deceased, there might have been issues raised that should have gone to the jury. But a court cannot properly submit to a jury facts on which the testimony is all one way. *Wisner v. Davenport*, 5 Mich. 501; *Pennsylvania Min. Co. v. Brady*, 16 Id. 332; *Medina Tp. v. Perkins*, 48 Id. 67; *Seligman v. Estate of Ten Eyck*, 49 Id. 104; *Chadwick v. Butler*, 28 Id. (2d ed.) 349, and notes.

Plaintiff had the burden of making out her claim; and, while the recital of age in the certificate of membership would perhaps have availed her had no inquiry been made as to age, it was merely the decedent's own statement, and could avail nothing against testimony. Here there was testimony that was positive and unambiguous, and it must stand until contradicted or impaired.

The court below took this view, and the judgment should be affirmed.

The other Justices concurred.