## SCOTT v. SCOTT.

1. Where the money of an infant was used by her guardian and husband in part payment for a lot of land, the titles to which were executed to the infant, the deed is voidable at the election of the infant on attaining her majority.

2. Confirmation by an infant on attaining her majority of a contract made in her name during her infancy is a question of intention, but retention of possession and receipt of rents after majority of a lot of land purchased for her in her infancy was not a ratification of the purchase, where she repudiated the purchase on the day she reached full age and brought action within three months thereafter to recover out of its sale so much of her money as was expended in its purchase.

3. A deed to land being made to an infant, and a note and mortgage executed by her guardian for the balance of the purchase money, the court properly ordered, on repudiation of the purchase by the infant plaintiff at her majority, that the land should be sold, and the proceeds applied first, to refunding the money of the plaintiff (who was in possession), and next to the payment of the note and mortgage.

4. But the vendor having taken the note and mortgage in the name of his wife, who afterwards assigned them to a third party and then died, her representative was not a proper party to this action.

5. Costs in equity follow the event of the action, unless otherwise ordered in the discretion of the chancellor—a discretion which will rarely be disturbed.

6. Plaintiff having elected to avoid the purchase, she should be required to account for all rents received by her while in possession of the property.

Before Norton, J., Abbeville, February, 1888.

The appeal in this case was from the following decree :

This action was heard at the February term, 1888, for said county. The defendant, T. M. Scott, became guardian for his wife, the present plaintiff, May 21, 1885, and received $6,000 of her estate. Very soon thereafter he bought for her from the defendant, J. W. Peak, a house and lot in McCormick, S. C., at $1,800, of which he paid to J. W. Peak on June 5, 1885, $1,000 of the funds held by him as guardian of his wife, and afterwards gave his note and his mortgage of the premises for the remaining $800. The note and mortgage were made payable to Julia F.

Peak, and were by her assigned to the defendants, Creighton Bros. The deed had been made by J. W. Peak directly to the plaintiff, and T. M. Scott's mortgage thereof was intended to be made legally operative by his writing after his signature, both to the note and to the mortgage the word "guardian." Plaintiff and her husband occupied the house for several months during her minority as a home, and he continued to rent it until March 18, 1887, when plaintiff arrived at the age of twenty-one years. On March 22, 1887, plaintiff notified J. W. Peak that she had arrived at age, and elected to rescind the trade, and also that she was ready to re-convey the property whenever $1,000 should be paid over to her. J. W. Peak replied that he thought the trade valid, that the note and mortgage had been transferred, but he thought it could be satisfactorily arranged.

Plaintiff has continued in possession and rented the premises until the present time. Such holding was not in ratification of the trade, but as equitable mortgagee in possession. The only evidence that Julia F. Peak and Creighton Bros. had any notice that T. M. Scott had used $1,000 of plaintiff's estate in the purchase, was the manner of his signature to the note and mortgage and the record of the deed to plaintiff.

Thereupon it is ordered, decreed, and adjudged, that the defendant, Julia F. Peak, is neither a necessary nor a proper party to this action; as to her, the complaint is dismissed with costs against the plaintiff. That the plaintiff do recover from her late guardian, T. M. Scott, the sum of one thousand dollars, with interest from June 5, 1885, less the net amount of rents from said premises received by her since March 18, 1887, to be ascertained by a reference which is hereby ordered to be held at the cost of the plaintiff.

That the defendants, Creighton Bros., do recover of the defendant, Thomas M. Scott, the sum of eight hundred dollars, with interest from July, 1885.

That the plaintiff do recover her costs against all of the defendants except Julia F. Peak, but that as between said other defendants they do recover of the defendant, Thomas M. Scott, their costs, and also such costs as they may pay to the plaintiff under this decree.

That if the defendant, Thomas M. Scott, fail to pay by the 1st day of September next, the said debts and costs adjudged against him, or leave any part thereof then unpaid, that the master do sell said premises subject to the lease for 1888 (the purchaser to receive the rents from the day of sale) on salesday in October next, or some convenient salesday thereafter, for one-half cash and the balance on a credit of one year, secured by the bond of the purchaser, a mortgage of the premises. and an assignment of an approved insurance policy on the building to the amount of such bond, or the insurable value of the dwelling house. That the master do collect the rents of said premises until said sale, that out of the proceeds of such rents and sale the master do pay, first, the taxes assessed and unpaid; second, the debt and interest adjudged to the plaintiff; third, the plaintiff's costs; fourth, the debt and interest adjudged to the defendants, Creighton & Bros.; and, fifth, the other costs ultimately adjudged against the defendant, Thomas M. Scott.

That the respective parties in whose favor judgment is herein rendered, have leave to issue execution for any balance remaining after such application of rents and proceeds of sale.

Thomas M. Scott will be entitled to receive any surplus on said sale after the payment of said debts and costs, for which he is ultimately liable, as aforesaid.

*Messrs. Benet & Cason*, for the assignees.

*Messrs. Parker & McGowan*, for J. W. Peak in his own right and as administrator.

*Messrs. J. W. Quattlebaum* and *W. H. Lyles*, for plaintiff.

October 12, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On May 21, 1885, T. M. Scott was appointed guardian of the person and estate of the plaintiff, Mattie J., who, although grown up, was still a minor, and received of her estate $6,000. On July 23, 1885, the said guardian, with the full consent of his ward, and in order "to provide a home for her," purchased from one James W. Peak two lots in the town of

McCormick, at the price of $1,800.   The guardian paid in cash of his ward's money $1,000, and gave to Mrs. Julia F. Peak, wife of J. W. Peak, his promissory note for $800, signed as "guardian," for the remainder of the purchase money.   Peak made title directly to the plaintiff, and the guardian, for her, executed a mortgage of the premises to secure the note for $800.   Both the note and mortgage were assigned for value to John Harmon, sr., and Creighton Bros.   Soon after this transaction (the precise time does not appear), the plaintiff intermarried with her said guardian, T. M. Scott,[1] and they entered into the purchased premises, and for several months occupied the same "as their home," until they removed to Kingstree, and then they continued to rent it until March 18, 1887, when the plaintiff arrived at the age of twenty-one years ; and thereupon from Kingstree, where she then resided with her husband, addressed a note to James W. Peak, saying: "I was an infant when the contract of July 23, 1885, conveying a house and lot in the town of McCormick to me was made, and was not capable of making any contract. Therefore I think it best to rescind this contract, and hereby give notice, as far as I am concerned, it is at an end.   But I am perfectly willing to reconvey to you, upon being paid the money, which was advanced on said contract," &c.   To this note Peak replied that the note and mortgage had been assigned, and he had nothing to do with the collection.   Creighton Brothers and Harmon, as assignees, commenced an action against T. M. Scott, "as guardian," to foreclose the assigned note and mortgage, and sell the house and lot.

Thereupon this action was brought by the plaintiff, Mattie J. Scott, to enjoin the foreclosure suit of Creighton Brothers, to sell the house and lot, and have the proceeds applied to certain costs, and then to the payment to plaintiff of the $1,000 cash paid with interest; and that T. M. Scott and James W. Peak, individually and as executors of Mrs. Julia F. Peak, pay any deficiency. Creighton Brothers, the assignees of the note and mortgage, answered, resisting the relief prayed for, and insisting that they

---

[1] T. M. Scott had married plaintiff prior to his appointment as her guardian on May 21, 1885, and therefore prior to the purchase of the lot.—RE-PORTER.

27

are innocent holders of the note and mortgage, without notice of the plaintiff's claim; and that the plaintiff, after coming of age, had confirmed the purchase of the house and lot, by retaining possession and receiving the rents thereof even down to the present time; and that it would be especially inequitable to allow her to recover the $1,000, without requiring her to account for rents, &c. James W. Peak answered, that he was not in possession of the land, and had no interest therein, as the note and mortgage for the remainder of the purchase money had been assigned, and also relying upon the defence, that the plaintiff had confirmed the contract after attaining her majority. It appeared that, notwithstanding the notice of rescission and the commencement of her action within three months thereafter, the plaintiff, after she came of full age, continued in possession through successive tenants, and is still in possession, exercising the rights of ownership.

Upon the testimony taken by the master, which is in the Brief, Judge Norton dismissed the complaint as to Julia F. Peak, but held that the plaintiff should recover from her late guardian, T. M. Scott, one thousand dollars, with interest, less costs; that Creighton Brothers should also recover from the said T. M. Scott eight hundred dollars and interest; that upon failure to pay by a given day, the house and lot should be sold, and, after the payment of certain costs, the proceeds should be paid out, first, on the amount adjudged to the plaintiff, and, second, on the amount adjudged to Creighton Brothers, &c., Thomas M. Scott to be entitled to the surplus, if any.

From this decree both parties appeal—the plaintiff, "Because his honor held that the defendant, Julia F. Peak, was neither a necessary nor a proper party to the cause, and awarded defendants costs against the plaintiff."

The defendants' exceptions: "I. Because it was error to hold that the plaintiff's retention of the house and lot described in the complaint was an equitable mortgage. II. Because it was error to hold that plaintiff did not ratify the purchase of said property, after she attained her majority, by her repeated acts of ownership and receipts of rents. III. Because he should have found that defendants did not know that plaintiff's money was used in the

purchase of the house and lot by T. M. Scott.   IV.  Because he should have held that the proceeds should be applied, first, to the payment of the note and mortgage for balance of the purchase money.   V.  Because he adjudged defendants to pay costs," &c.

It is probably true that the purchase of the house and lot in McCormick, to "secure a home for the plaintiff," was made with her full consent and approval.   She had then reached the age of discretion, and was about to marry.   But in law she was still a minor, and the guardian could not invest any of her money in real estate without the permission of the court.   It may also be true that the court, if applied to, would, under the circumstances, have given such permission ;  but it was not done, and therefore the purchase was without authority.   The transaction, however, was not absolutely void, but voidable.   The plaintiff, in strictness, had the right, upon reaching her majority, to confirm or avoid it. She brings her action now to avoid it, and the main question of the case is, whether, by her acts, she confirmed it after she reached her majority.   *Ihley* v. *Padgett*, 27 S. C., 300.   Confirmation is a question of intention, and whether that intention exists or not must generally be inferred from circumstances.   In a note to the case of *Ihley* v. *Padgett, supra,* in the Southeastern Reporter (3 vol., 471), the principle is thus stated : "If an infant continues, after arriving of full age, to occupy a position, which is only explicable upon the supposition that he intended to stand by a contract executed during minority, such contract will be deemed to be ratified.   *Durfee* v. *Abbott*, 28 N. W. Rep., 521."

Did the plaintiff by her acts, after coming of age, occupy such a position ?   Was her continued possession "only explicable upon the supposition that she intended to stand by the contract" ?   We incline to think it would have been sufficient if it had stood alone and unexplained.   But we cannot overlook the circumstances, that upon reaching her majority she promptly notified her recision, and within three months thereafter brought her action for that purpose—most of the acts relied upon for confirmation having been done while the action was actually pending.   Besides, some of her money had been advanced on the purchase of the property, and her retaining possession may have been for. the purpose of securing that advanced.   We cannot, therefore, say

that the plaintiff's continued possession was "only explicable upon the supposition that she intended to stand by the contract." Her written notice of rescission and the action itself negative that view.

It is further insisted that the judge should have found that defendants did not know that plaintiff's money was used in the purchase of the house and lot; and he should have held that the proceeds of the sale should be applied first to the note and mortgage for the unpaid purchase money. All that the judge said about notice was this: "The only evidence that Julia F. Peak and Creighton Brothers had any notice that T. M. Scott had used $1,000 of plaintiff's estate in the purchase, was the manner of the signature to the note and mortgage and the record of the deed to plaintiff," &c. And therefore he dismissed the complaint as to Julia F. Peak, and gave a decree in favor of Creighton Brothers, as assignees of the note and mortgage, against Thomas M. Scott for $800 and interest, to be paid from the proceeds of sale after the decree in favor of the plaintiff was paid. It seems to us that Creighton Brothers have no right to complain of this. If the transaction had not been set aside as made during the minority of the plaintiff, we do not see that the note and mortgage, which they held as assignees, being signed by Scott, with the addition to his name of the word "guardian," would have bound the house and lot, the title of which was in the plaintiff. But as the transaction was rescinded, the plaintiff, who had titles to the property ordered to be sold, had the highest equity, as a mortgagee in possession, to be refunded the advance made out of her money in the abortive purchase. We cannot say that it was error to order the plaintiff to be first paid.

There was no evidence that Mrs. Julia F. Peak was present when her husband, James W. Peak, negotiated the sale to Scott, or that she had anything to do with the transaction, except to receive the note and mortgage made to her, and to assign the same. We cannot affirm that it was error in the judge to dismiss the complaint as to her.

In a proceeding in equity, costs follow the event of the suit, unless otherwise directed by the presiding judge, as a part of the

relief intended to be granted; and in such cases this court will rarely disturb the direction.

As the plaintiff exercised her right to have the purchase of the house and lot declared void, we think the order of reference made by the judge as to the rents and profits since March 18, 1887 (when the plaintiff attained her majority), should be so enlarged as to cover the whole period from the time she and her husband took possession in 1885.

With this modification, the judgment of this court is, that the judgment of the Circuit Court be affirmed.