### SCALLEN v. STATE HEALTH COMMISSIONER.

#### DECISION OF THE COURT.

1. HEALTH—CORRECTION OF VITAL STATISTICS RECORDS—EVIDENCE.
   Order correcting record of plaintiff's birth in State health department's vital statistics records is affirmed on certiorari, there being evidentiary support for finding made on the factual dispute presented to the trial court in statutory proceeding for correction of records (CLS 1961, § 326.17).

#### DISSENTING OPINION.

#### SOURIS, J.

2. EVIDENCE—AFFIDAVITS—HEARSAY.
   *Representations in affidavits based upon declarations made by others than the affiants and offered to prove the truth of the matters stated were hearsay.*

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur 2d, Certiorari §§ 16, 17.
[2, 9] 3 Am Jur 2d, Affidavits §§ 29, 30.
[3, 4, 10, 11] 20 Am Jur, Evidence §§ 468–475.
[5] 20 Am Jur, Evidence § 184.
[6–8, 12–17] 14 Am Jur 2d, Certiorari §§ 63–67.

3. SAME—HEARSAY—FAMILY HISTORY.

   *Evidence of an oral statement regarding family history, made by a declarant, now dead, may be admitted, where the declarant is related by blood or marriage to the person about whom the statement was made.*

4. SAME—HEARSAY—FAMILY HISTORY—CREDENCE.

   *Hearsay statements on a matter of family history concerning a person related by blood or marriage to the declarant, now deceased, and which are made prior to the dispute they were introduced to resolve and without any apparent motive to deceive are admissible if the declarant be identified so that the trier of the facts may make a determination as to credence.*

5. SAME—INFERENCES—OMISSION TO PRODUCE RECORDS.

   *Omission to introduce in evidence records of high school and college which had record of an age but not date of birth could raise inference such records would not have supported contention of plaintiff in proceeding to correct vital statistics records in State health department that his birth was a year later than such records presently showed (CLS 1961, § 326.17).*

6. CERTIORARI—SCOPE OF REVIEW OF SPECIAL STATUTORY PROCEEDINGS.

   *An appeal from a special statutory proceeding for the purpose of correcting vital statistics records in State health department, not in the course of the common law, must be viewed as an appeal in the nature of certiorari, whereby review by the Supreme Court on order of superintending control is confined to questions of law (CLS 1961, § 326.17).*

7. SAME—REVIEW OF EVIDENCE.

   *Review of evidence by an appellate court on certiorari does not include determination whether the probabilities preponderate one way or the other but simply the ascertainment of whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, not whether the inference would or would not be drawn by the appellate court.*

8. HEALTH—CORRECTION OF VITAL STATISTICS RECORDS—FINDING OF COURT—INFERENCES.

   *Evidence adduced in proceeding to correct record of plaintiff's birth in State health department's vital statistics records held, insufficient to support finding of trial court that such records should show date claimed by plaintiff, where the finding was based only in part upon inferences permissible from admissible evidentiary fact, in part upon inferences drawn upon inferences,*

*and in part upon bare assumptions, notwithstanding sufficiency of evidence to support finding that such records were in error (CLS 1961, § 326.17).*

SEPARATE OPINION.

DETHMERS, KELLY, and O'HARA, JJ.

9. EVIDENCE—AFFIDAVITS—HEARSAY.

*Representations in affidavits based upon declarations made by others than the affiants and offered to prove the truth of the matters stated were hearsay.*

10. SAME—HEARSAY—FAMILY HISTORY.

*Evidence of an oral statement regarding family history, made by a declarant, now dead, may be admitted, where the declarant is related by blood or marriage to the person about whom the statement was made.*

11. SAME—HEARSAY—FAMILY HISTORY—CREDENCE.

*Hearsay statements on a matter of family history concerning a person related by blood or marriage to the declarant, now deceased, and which are made prior to the dispute they were introduced to resolve and without any apparent motive to deceive are admissible if the declarant be identified so that the trier of the facts may make a determination as to credence.*

12. CERTIORARI—SCOPE OF REVIEW OF SPECIAL STATUTORY PROCEEDINGS.

*An appeal from a special statutory proceeding for the purpose of correcting vital statistics records in State health department, not in the course of the common law, must be viewed as an appeal in the nature of certiorari, whereby review by the Supreme Court is confined to questions of law (CLS 1961, § 326.17).*

13. SAME—EXAMINATION OF EVIDENCE.

*Examination of evidence by an appellate court, when reviewing by certiorari, does not determine whether the probabilities preponderate one way or the other but simply ascertains whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, not whether the inference would or would not be drawn by the appellate court.*

14. SAME—FINDING OF FACT BY THE TRIAL JUDGE.

*An appellate court may not on review by certiorari accept a finding of fact that has been made by a trial judge, sitting*

*as statutory trier of the facts, and reject summarily the logical extension of such finding made by the trial judge (CLS 1961, § 326.17).*

15. HEALTH—CORRECTION OF VITAL STATISTICS RECORDS—FINDING OF COURT—EVIDENCE.
*Finding of fact by trial judge in special statutory review of proceeding to correct records of vital statistics in State health department that record of date of plaintiff's birth should be corrected to be 1 year later than theretofore recorded, made by the court which had jurisdiction in proceedings that are regular and which presented a factual dispute, are affirmed, there being evidentiary support for the finding made (CLS. 1961, § 326.17).*

SEPARATE OPINION.

BLACK, J.

16. CERTIORARI—FINDING OF FACT—EVIDENCE—INFERENCES.
*Affirmance of an order by a trial judge who sat as a statutory trier of the facts, and made a finding of fact, upon which the order was based, on a disputed factual issue should be made by the Supreme Court, where there is any evidence or any permissible inference from the proof to support the finding made (CLS 1961, § 326.17).*

17. HEALTH—CORRECTION OF VITAL STATISTICS RECORDS—FINDING OF COURT—EVIDENCE.
*Finding of fact by trial judge in special statutory review of proceeding to correct records of vital statistics in State health department that record of date of plaintiff's birth should be corrected to be 1 year later than theretofore recorded, made by the court which had jurisdiction in proceedings that are regular and which presented a factual dispute, are affirmed, there being evidentiary support for the finding made (CLS 1961, § 326.17).*

Appeal from Wayne; Culehan (Miles N.), J. Submitted January 5, 1965. (Calendar No. 53, Docket No. 50,444.) Decided June 7, 1965.

Petition by John Peter Scallen against Albert E. Heustis, State Health Commissioner, to determine date of birth and cause correction in birth records.

Order directing change in records. Defendant appeals. Affirmed.

*James E. Haggerty* and *Edward P. Echlin* (*Edmund E. Shepherd,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald T. Kane* and *Victor H. Meier,* Assistant Attorneys General, for defendant.

SOURIS, J. (*dissenting*). This appeal is taken by leave granted from an order of the trial court directing the defendant State health commissioner to change the birth records of the health department to show February 13, 1890 as the date of birth of plaintiff, a judge of the recorder's court of the city of Detroit. A statutory hearing in circuit court was held upon a petition filed December 21, 1960, pursuant to CLS 1961, § 326.17 (Stat Ann 1956 Rev § 14.237), after the health commissioner had refused plaintiff's request to make such change in his record of birth.

Plaintiff claims that until 1956 he believed he had been born on February 13, 1889, and had so listed his date of birth whenever it was required as, for example, in executing his membership form for the judges' retirement system on January 26, 1952. In July of 1956 plaintiff was asked to furnish proof of his age to the retirement system and, in the course of trying to do so, he alleges he discovered discrepancies in public birth records relating to him. He now avers that he was born on February 13, 1890.

In plaintiff's attempt to establish February 13, 1890 as the date of his birth he alleges that the official State and county records of his birth are in error. There is no doubt that some of those records

are wrong, since the date shown for his birth in the records of Wayne county varies from February 13, 1888 to February 18, 1889.[1] One thing, however, is certain about the records: none of them provides even the slightest basis for assuming that plaintiff was born in 1890.

To establish his birth occurred on February 13, 1890, plaintiff relies solely upon two affidavits. One affidavit was given by Mary C. Cooney, sister of plaintiff, who was born November 24, 1885. She avers that as of the day of the burial of plaintiff's brother Cornelius, April 14, 1889, when she was three years, four months and 21 days old, "she is positive of her own knowledge" that plaintiff was not yet alive. She further avers that "frequently during her lifetime her mother, in family discussions said, 'She was carrying John shortly after the burial of Cornelius.'" Upon this basis Mrs. Cooney "believes * * * [plaintiff] was born on February 13, 1890."

A second affidavit was filed by Margaret S. Hoelscher, a cousin of plaintiff, who was born February 19, 1884. She, too, alleges as her recollection that at the time of Cornelius' death plaintiff was not alive, but, like Mrs. Cooney, she has no recollection of the actual date or year of plaintiff's birth. She makes reference to family tradition, but without identifying its source, from which, if true, it might be inferred that plaintiff was born in 1890.

Defendant objected to the admission into evidence of both of these affidavits on the ground that they contained hearsay evidence. The representations in

---

[1] In addition to this intrinsic evidence of error, plaintiff relied upon the testimony of a former employee of the Wayne county clerk's office who was employed therein from 1952 to 1956. This record does not disclose on what basis he was allowed to make his pronouncements about the manner in which entries were made in the clerk's office 63 years before he commenced his employment therein, as quoted in Mr. Justice O'HARA's opinion.

the affidavits as to plaintiff's family history, based
upon declarations made by others than the affiants
and offered to prove the truth of the matters stated,
were hearsay. There is, however, a well-established
exception to the hearsay rule in the case of state-
ments regarding family history. If the declarant
who made the statement sought to be introduced as
hearsay were related by blood to the person about
whom the statement was made, or if the declarant
were the spouse of someone so related, the statement
may be admitted if the declarant be dead. *Lamor-
eaux* v. *Attorney General* (1891), 89 Mich 146, 160.

Testing the affidavits by this standard the hearsay
contained in Mrs. Cooney's affidavit was admissible.
It consisted of statements alleged to have been made
by plaintiff's mother, who is now deceased, prior
to the dispute they were introduced to resolve and
without any apparent motive to deceive. Such can-
not, however, be said of the affidavit of Mrs. Hoel-
scher. She gives no source for her hearsay evidence
relative to plaintiff's birth date. For all that ap-
pears in her affidavit the unidentified declarant
might still be alive. When hearsay evidence as to
family history is admitted, the declarant must be
identified in order that the trier of fact have some
basis for determining the credence to be given such
evidence. Since Mrs. Hoelscher's affidavit did not
specify the declarant, its hearsay was inadmissible.
See Rule 63(24) of the Uniform Rules of Evidence.[2]

All of the official State and county records, the
veracity of which plaintiff disputes, agree in at least
this respect: that plaintiff was not born in 1890
but, rather, was born sometime before. In addition,
the record of the United States census department,
a copy of which plaintiff himself submitted to the
State health department, shows that in the Federal

[2] 9A Uniform Laws Annotated, 1964 Cum Ann pocket part, p
245.

census of 1900 plaintiff's birth date was recorded as February, 1889.

For over 65 years plaintiff believed he was born in February, 1889, and it does not appear in the record that any of his numerous family ever tried to disabuse him of this belief. Moreover, plaintiff testified that in his efforts to document his birth date he checked the records of the high school and college he attended and that "they had a record of an age, but not of a date of birth." These early records, which at least gave plaintiff's age, were not introduced into evidence by him. It could be inferred from this omission on his part that the age as shown in the school records would not have supported his contention that he was born in 1890. See cases collected and cited at pp 285, 286 of *Prudential Insurance Company of America* v. *Cusick* (1963), 369 Mich 269. Plaintiff also testified that he had consulted the national archives for a record of his birth, but was unsuccessful since "prior to 1890 all records had been destroyed by fire." Had plaintiff been born in 1890 as he claims, such fires would not have destroyed records of his birth.

This appeal from the above cited special statutory proceeding, not in the course of the common law, must be viewed as an appeal in the nature of certiorari. See *Jackson* v. *People* (1860), 9 Mich 111, 117, 118 (77 Am Rep 491). Certiorari is one of the writs superseded by orders of superintending control, GCR 1963, 711.3, but the scope of our review by order of superintending control in circumstances such that certiorari previously would have issued is identical with the scope of our review by that common-law writ. Thus, our review in this case is confined to questions of law.

"The office of a *certiorari* is not however to review questions of fact, but questions of law. And in

examining into the evidence the appellate court does
so not to determine whether the probabilities pre-
ponderate one way or the other but simply to deter-
mine whether the evidence is such that it will justify
the finding as a legitimate inference from the facts
proved, whether that inference would or would not
have been drawn by the appellate tribunal." *Jack-
son* v. *People, supra,* p 120.

If the trial court's finding that plaintiff was born
on February 13, 1890 is to be affirmed, evidentiary
support therefor must be found in the admissible
portions of the two affidavits, for all of the other
pertinent admissible evidence disputes that finding
tending, instead, to support a finding that plaintiff
was born prior to 1890. Had either affidavit con-
tained a positive assertion of affiant's own knowl-
edge that plaintiff was born on February 13, 1890
or on personal knowledge, notwithstanding affiants'
tender years at the time of occurrence of the event,
that plaintiff was not born prior thereto, our ap-
pellate task would be ended because such evidence
clearly would have supported the trial court's
finding.

However, nowhere in Mrs. Hoelscher's affidavit is
there any admissible evidence bearing on the issue
except that plaintiff was not alive at the time of
his brother's burial and nowhere in Mrs. Cooney's
affidavit, relating to events 68 years earlier, does
she, 72 years old when sworn, claim of her own
knowledge that plaintiff was born in 1890. Indeed,
although Mrs. Cooney asserts a distinct recollection
of the death of Cornelius when she was three years,
four months and 21 days old, she makes no claim
of personal memory of plaintiff's birth which she
alleges, but only on information and belief, occurred
on February 13, 1890 when she would have been
four years, two months and 20 days old. She does
assert of her own knowledge that plaintiff was not

born at the time of Cornelius' burial, as does Mrs. Hoelscher, and that her mother frequently stated in family discussions during her lifetime that she was carrying plaintiff after the burial of Cornelius. We are not advised whether plaintiff's mother was carrying him before and at the time of burial. Nor are we advised why, if it was common currency in family exchanges that plaintiff's mother was carrying him after Cornelius' death, the plaintiff nonetheless persisted in his belief without question, even upon the most solemn occasions, for example, his marriage in 1915, that he had been born on February 13, 1889, before his brother's burial.

*While Mrs. Cooney's affidavit, directly and by permissible inference, would have supported a finding that plaintiff was not born on February 13, 1889, as would, also, Mrs. Hoelscher's affidavit, there is no direct or inferential showing therein or otherwise that he was born, instead, on February 13, 1890.* In order to conclude, as did the trial judge, that plaintiff was born on February 13, 1890, one must make the following inferences and assumptions: that plaintiff's mother was not carrying plaintiff before and at the time of, as well as after, his brother's burial; that he was not born between April 14, 1889, the date of his brother's burial, and the year's end; that, while the official birth records erred in stating plaintiff's year of birth, they accurately stated the day as February 13th; and that official birth records *made in 1889,* which listed plaintiff by name, parentage, and place of birth, as well as by birth date prior to 1890, somehow erroneously anticipated by one year the fact of plaintiff's birth. The trial judge's conclusion that plaintiff was born on February 13, 1890, based only in part upon inferences permissible from admissible evidentiary fact, in part upon inferences drawn from inferences, for example, that plaintiff was not born sometime

in 1889, and in part upon bare assumptions, for example, that plaintiff was born on *a* February 13th,[3] does not meet the legal standard for affirmance enjoined upon us by *Jackson* v. *People, supra.* We cannot conclude that (p 120) "the evidence is such that it will justify the finding as a legitimate inference from the facts proved."

The trial court's order filed May 7, 1962, determining plaintiff's date of birth as February 13, 1890, and granting plaintiff other relief in conformance therewith should be vacated. Costs may be taxed.

T. M. KAVANAGH, C. J., concurred in result.

O'HARA, J. (*for affirmance*). I do not read the record in this case as does my distinguished Associate. I am in agreement with his statement of the issue and the legal principles involved. It seems to me, however, Mr. Justice SOURIS in his opinion does exactly what he holds is legally impermissible. I refer to the fact-finding process, or at least the inference-from-facts process which he applies to the record which was adduced. He writes:

"There is no doubt that *some of those records are wrong*, since the date shown for his birth in the records of Wayne county varies from February 13, 1888 to February 18, 1889. One thing, however, is certain about the records: none of them provides even the slightest basis for assuming that petitioner was born in 1890." (Emphasis supplied.)

This finding of fact, conclusion of fact or inference from facts, to me, ignores the basic holding of the

---

[3] The birth records in evidence variously show plaintiff's day of birth as February 12, 13, and 18. Nothing appears in this record, other than plaintiff's apparently continuous use of February 13 as his day of birth, to support a judicial finding that he was born on February 13, rather than February 12 or 18.

circuit judge, sitting in a nonjury proceeding. The trial judge found:

"Such records, especially those which purport to certify that plaintiff was born in 1889, rather than in 1890, are wholly unreliable, and *the court gives them no credence.*" (Emphasis supplied.)

I am unable to perceive how appellate review by certiorari permits this Court to accept one finding of fact that "some of those records are wrong" and reject summarily the logical extension of such a finding made by the trial judge that all of them were contrary to fact and untrustworthy.

It should not be overlooked that the legislature must have recognized that uncertainty and error attended certain public records when it invited, by statute,* judicial review thereof and empowered the circuit courts to order their correction.

At the peril of doing precisely what I contend our Court is not empowered to undertake here, I must, to answer my Brother's rationale, make reference to those evidentiary excerpts which led Judge Culehan to reject the "records" so-called *in toto.* Edward Drennan, a total stranger to these proceedings, living in Chicago and a former employee of the county clerk's office in Wayne county, testified as follows:

"*Q.* During that time, you were so employed by the county clerk, did you have anything to do with records of vital statistics?

"*A.* Yes, sir.

"*Q.* Birth records, particularly?

"*A.* Yes, I did.

"*Q.* Did you have anything to do with searching records in the office of the county clerk for birth certificates?

"*A.* Yes.

---

* CLS 1961, § 326.17 (Stat Ann 1956 Rev § 14.237).—REPORTER.

"*Q.* Were you familiar from your employment in the county clerk's office with the manner in which birth certificates were filed in the office of the county clerk prior to 1906?

"*A.* Yes, I was.

"*Q.* And what was that method?

"*A.* Well, there were several methods. One was a census that was taken every year by—well, he was a political appointee of a ward or a district and he would solicit birth records.

"*Q.* Yes.

"*A.* Also, doctors and hospitals used to turn in their records to the county clerk.

"*Q.* And how were they kept? In what manner were they kept prior to the year 1906 in the office of the county clerk of Wayne county, Michigan?

"*A.* Well, they were kept very loosely. There was no—they had no system prior to 1906.

"*Q.* Was there any book—

"*A.* (Interrupting) Yes, there was.

"*Q.* (Continuing)—wherein they were kept?

"*A. But when they were entered in the book, it had nothing to do with when they came into the county clerk.* In other words, these records were allowed to accumulate.

"*Q.* Yes.

"*A.* And then possibly—no one knows when they were put in the book because I asked several people when were they put in the book and there was no system. For example, today, when a paper comes into the county clerk, it is stamped and filed such and such a date. Now, when it gets into the calendar, I mean, is another date. It might be two or three days. It is generally the following day, *but there is no way of knowing when they got into these books.*

"*Q.* In other words, there was no identification stamp as to date?

"*A.* No, there was not.

"*Q.* On either the report of the census filed by different individuals or the time that the doctors would file a certificate of birth?

"*A.* Some of the doctors, there were; there were. But, most of them there weren't.

"*Q.* I see. And in relation to the time they were filed until they were entered into the book, there was no way of ascertaining that fact?

"*A.* There was no way to determine when the records came in and *when they were put in the book, no.*" (All emphasis supplied.)

This testimony alone, if accorded the credence the trial judge was permitted to accord it, was ample to allow him to reject the records of Wayne county in relation to this date of birth. However, there are so many patent errors in the records themselves that without that testimony Judge Culehan's conclusion was amply justified. Exhibit A, supposedly recorded May 8, 1889, shows a John P. Scallon to have been born February 13, 1888. Exhibit B, purported to have been recorded May 10, 1890, shows a John Scallon to have been born February 18, 1889. Exhibit C, an enumerator's return (paid for on the basis of 10-cents per item to a patronage appointee) and said to have been recorded May 11, 1890, attests plaintiff's birth of February 18, 1889. An earlier enumerator's return shows plaintiff to have been born February 13, 1888. Exhibit E, yet another recorded May 11, 1890, sets the birth date at February 12, 1889. Apparently each enumerator considered the 10-cent stipend for a birth or death recording of considerably more importance than the accuracy of the date of the event it purported to attest. Climaxing the weird melange of recording errors is plaintiff's brother's birth certificate. Cornelius Scallen is shown to have been born less than 2 months *after* plaintiff, a phenomenon not generally regarded as physically possible. The "birth" certif-

icate was later shown to be a death certificate. But
says Justice SOURIS, as I understand him, none of
these errors establishes even the possibility of plain-
tiff being born in 1890. This misconstrues the pur-
pose of the testimony and disregards the plain
intention of the statute. The foregoing testimony
went not to the date of plaintiff's birth, but as I view
the record, it went to the point of the total unreli-
ability of the public records. When this was estab-
lished, and surely it was, the fact finder was entitled
to accept the affidavit evidence. Nor do I find it a
necessary conclusion that the foregoing hodgepodge
of inaccuracy "anticipated by one year the fact of
plaintiff's birth." To so conclude one must dis-
regard completely the testimony of Mr. Drennan
that the dates on which records were *supposed to
have been entered* did accord with the actual date.

I do not conclude as does Justice SOURIS that the
finding that plaintiff was born on "a" February 13th
"was a bare assumption." No one seriously chal-
lenged the day of birth. The trial judge did not even
address himself to it. Thus when it appeared, under
the positive unequivocal affidavit evidence that
plaintiff was not yet born in 1889, the court came
to the eminently logical conclusion that he was born
on an unchallenged day of the following year. It is
not unknown that the term for which infants are
carried varies a month or so either way.

If one feels obligated to take a legalistic approach
to this controversy, it could well be argued that the
records themselves, without plaintiff's affidavits, es-
tablish prima facie that plaintiff's legal birth date
is February 13, 1890. Exhibit "E", a form of af-
fidavit furnished by the State and filed April 25,
1958, made 5 changes in the official record of plain-
tiff's birth. It changed the day-date from February
18th to February 13th. It changed the incorrect

family name spelling from "Scallon" to "Scallen." It
added plaintiff's mother's maiden name. It spelled
out the name Peter and gave the birth-year date as
*1890*. Someone never identified, at some time never
established, drew a pen line through the year "1890"
and substituted in pen "1889." The undetermined
scrivener also scratched out "Peter" as typed and
wrote the initial "P." Nevertheless, the affidavit
was accepted for filing for what it was—a correction
of the date of plaintiff's birth certificate. Are we
on appellate review by certiorari (common-law or
1963 model, if there be a difference) required to find
that the pen alterations were made *before* the affi-
davit was accepted? Was he not completely free
to accept the just as logical postulate that someone
without authority or basis, in fact or in law, pen-
altered the affidavit *after* it was accepted and filed?
If this be so, plaintiff's birth date was corrected by
affidavit on April 25, 1958. Under the attorney
general's theory of the case, such accomplished cor-
rection would establish *prima facie* the birth-year
date as 1890. If the affidavits, as he contends, are
insufficient to justify a change from 1888 or 1889,
to 1890, I assume they would likewise be insufficient
to change the date from 1890 to 1889. One does not
suppose their effectiveness is dependent on whether
the change is to advance or set back the birth date.

In the two and a half years during which I have
been privileged to serve on this Court, if there is
one tenet, one legal axiom I have learned, it is that
almost sacrosanct and reverential status is accorded
the findings of fact made by a jury or a trial judge
in a nonjury case. Tested by this settled principle
unless we make a separate rule for this case, it seems
to me we are impotent to disturb Judge Culehan's
findings.

As lately as February of this year, Mr. Justice
Black alluded to the principle here involved:

"This is one of the many cases, appealed to this
Court as a matter of right under former practice,
where controlling issues of fact only have been tried
on mutual waiver of a jury; whereupon the losing
party has come here with allegation that the trial
judge's findings of fact are contrary to the clear
preponderance of the evidence.*" (The asterisk
refers to the footnote which I also quote.) *Kevreson
v. Michigan Consolidated Gas Company,* 374 Mich
465–467.

I am not unmindful that *Kevreson* is a jury-
waived automobile negligence case and that the case
at bar is a special statutory proceedings affording
no jury trial. This difference does not alter the rule.
It would indeed stretch the appellate reviewing proc-
ess to say here that "the trial judge's findings of
fact are contrary to the great weight of the evi-
dence."

I neither cite nor discuss other precedent cases,
nor other authority, for I believe none is involved.
The narrow limits of review by certiorari are point-
ed out by Mr. Justice Souris. I accept them. The
court had jurisdiction. The statute specifically sup-
plied it. The proceedings were regular. The total
evidentiary record presented a factual dispute. The
trier of the facts made findings of fact and permissi-
ble inferences therefrom. I find no error. The order

---

"* Former Court Rule No 64 (1945) provided that 'Appellant may
assign as error that the judgment is against the preponderance of
the evidence.' This has been changed to 'Appellant may assign as
error that the finding on the issue tried without a jury is clearly
erroneous.' GCR 1963, 810. The change of wording does not affect
our status as a reviewing Court. We adhere to what was said on
that score in *Schneider* v. *Pomerville,* 348 Mich 49, *Northwest Auto
Company* v. *Mulligan Lincoln-Mercury, Inc.,* 348 Mich 279, and
*Barnes* v. *Beck,* 348 Mich 286."

of the trial judge directing correction of the records is affirmed.  Costs to the appellee.

DETHMERS and KELLY, JJ., concurred with O'HARA, J.

BLACK, J. (*for affirmance*).  It is true that this Court remains addicted to those weasel words, "review in the nature of *certiorari.*"  Nonetheless, our order granting leave to review Judge Culehan's statutory determination was, in unqualified legal effect, an issued writ of *certiorari.** I therefore approach the task of present review within the "any evidence" confines of that constitutionally authorized writ.

Mr. Justice FELLOWS, describing the scope of review upon *certiorari,* laid out those confines in *Meyers* v. *Michigan C. R. Co.,* 199 Mich 134, 137, 138:

"It may not be necessary to repeat what we have so frequently said that this Court does not review the findings of fact of the board, except to determine whether there is any evidence to support the award. The evidence may not be direct; it may be circumstantial.  The board not only passes on the credibility of witnesses, but draws its inferences from the circumstances and the facts which it finds established.  We may reverse awards for a failure of evidence to support them, but we are not the triers of the facts.  With this view in mind, we approach the consideration of this case."

I could agree both with the reasoning and result Justice SOURIS has proposed had this been a common-law action with review sought on ground that nonjury findings are contrary to clear preponderance, or that such findings are "clearly erroneous"

---

* The present Constitution dubs it a prerogative and remedial writ. Const 1963, art 6, § 4.

(see *Kevreson* v. *Michigan Consolidated Gas Company,* 374 Mich 465, 467). For instance, if the question had come here as in the factually like case of *Fontana* v. *Ford Motor Company,* 278 Mich 199, the Court well might conclude as it did in *Fontana.* But this is no common-law *Fontana Case.* This is *certiorari* to review a special determination of fact the circuit court was expressly authorized to make and enter with respect to correction of records of birth and death. See CLS 1961, § 326.17 (Stat Ann 1956 Rev § 14.237). So, if there is *any* proof as contemplated by section 326.17, or *any* permissible inference from such proof, tending to support what Judge Culehan found factually, affirmance is due automatically. Here there is such proof and inference, as Justice Souris' thoroughgoing analysis of the record plainly discloses.

Compare Justice Souris' foregoing analysis with this connected passage (*Fontana* at 202–204):

"Defendant contends that, as against the record evidence, the testimony of plaintiff and his brother has no probative force as a matter of law and the record must be taken as conclusive proof of plaintiff's age, citing *Webb* v. *Haycock,* 19 Beav 342 (52 Eng Rep 382); *Denoyer* v. *Ryan,* 24 F 77; *Campbell* v. *State,* 21 Okla Cr 243 (206 P 622); *Meehan* v. *Supreme Council Catholic Benevolent Legion,* 95 App Div 142 (88 NYS 821); *Hunt* v. *Supreme Council, Order of Chosen Friends,* 64 Mich 671 (8 Am St Rep 855), none of which, however, sustains the contention.

"In this State one is competent to testify to his own age, *Cheever* v. *Congdon,* 34 Mich 296, his testimony, though rebuttable, is 'best evidence,' *i. e.,* not secondary, *Morrison* v. *Emsley,* 53 Mich 564, and it raises a question of fact, if denied by testimony or circumstances, *Durfee, for the use of Lantz,* v. *Abbott,* 61 Mich 471; *People* v. *Bernor,* 115 Mich 692; *Schweitzer* v. *Bird,* 204 Mich 333. The testimony

of plaintiff's brother is competent at least to his proximate age. *Hancock* v. *Supreme Council Catholic Benevolent Legion,* 69 NJ Law 308 (55 A 246).

"Defendant cites no statute or authority which gives to any of the records produced greater probative force than that of 'competent' testimony. Plaintiff's voting registration and marriage affidavit are by way of impeachment of his claim as to his age. All the other testimony is strictly hearsay because no witness with personal knowledge of the facts was produced. Consequently, none of the proof is of such a superior legal character as to determine the fact and the issue necessarily is for the jury.

"However, the finding of a jury in favor of plaintiff's claim of age would be against the great weight of the evidence. Plaintiff's mother lives with him and he did not produce her as a witness nor take her deposition. An inference arises that her testimony would have been unfavorable to him. This failure and inference, together with plaintiff's conduct (during all the time and on all occasions when he had no interest in misrepresenting it) in representing his age as the records proclaim it, and the fact that the record evidence is wholly unimpeached for errors, are of overwhelming force as against the bare statements of plaintiff and his brother. This requires reversal of the judgment and new trial."

I agree with Justice O'HARA that the statutory determination made in circuit should be affirmed.

SMITH and ADAMS, JJ., did not sit.