KNUDSON *et al* v. GRAND COUNCIL OF NORTHWESTERN LEGION OF HONOR *et al.*

1. Where, by the terms of a certificate of insurance, issued by a mutual benefit association, the application and medical examination are made a part of the contract, and in such application it is stipulated that the statements made therein and answers made to the medical examiner are to be deemed warranties, untrue statements in such application and untrue answers made to the medical examiner in answer to questions propounded constitute a breach of warranty, and avoid the contract.

2. Conversations with, or statements made by a soliciting agent of a mutual benevolent association prior to or at the time of an application for the issuance of an insurance certificate, in the absence of proof of fraud, are inadmissible to contradict or vary the terms of the written contract between the parties.

3. The provisions of section 24, c. 51, Laws 1890, do not apply to mutual benevolent associations, but are only applicable in certain cases to life insurance companies specified in the first 31 sections of the chapter.

(Syllabus by the Court. Opinion filed June 22, 1895.)

Appeal from circuit court, Minnehaha county.   Hon. JOSEPH
W. JONES, Judge.

Action to recover life insurance.  Judgment for plaintiffs, and
defendants appeal.   Reversed.

The facts are stated in the opinion.

*U. S. G. Cherry,* for appellant.

The charter, constitution and by-laws and rules of a society
enter into and become a part of the contract between the organi-
zation and member and are to be construed together.   Hellenburg
v. District, 94 N. Y. 580; Masonic v. Burkhart, 110 Ind. 189; Bar-
ton v. Provident, 63 N. H. 535; Worley v. Northwestern, 10 Fed.
227; 16 Am. & Eng. Ency. 41; Lowell v. Middlesex, 8 Cush. 127.
Misrepresentations made by the insured at his examination viti-
ates the contract.   Dwight v. Ins. Co., 103  N. Y. 341; Ripley v.
Ins. Co., 30 Id. 136; Glendale v. Protection, 21 Conn. 19; Baum-
gart v. Modern, 55 N. W. 713; Jeffries v. Econonical, 22 Wall. 47;
Aetna v. France, 91 U. S. 510; Gluting v. Metropolitan, 13 Atl. 4;
Hunt v. Supreme, 31 N. W. 576; United v. White, 100 Pa. St. 12;
Sweet v. Citizens, 78 Me. 541.

The terms of a written contract cannot be added to, taken
from or varied by parol evidence, and an agent who has no au-
thority to complete the contract cannot bind his principal or waive
any of the provisions of the contract.   Vose v. Ins. Co., 60 Mass.
42; Jennings v. Ins. Co., 2 Denio 75; Barlean v. Ins. Co., 67 N. Y.
595; Mitchell v. Ins. Co., 51 Pa. St. 402; Ins Co. v. Mowery, 96 U.
S. 544; Combs v. Ins. Co., 65 Me. 382; Ripley v. Ins. Co., 30 N. Y.
136; Lee v. Ins. Co., 3 Gray 583; Tebbetts v. Ins. Co. 3 Allen 569;
Jenkins v. Ins. Co., 7 Gray 370; Ainsworth v. Ins. Co., 112 Mass.
422; Chase v. Ins. Co., 20 N. Y. 52; Dewees v. Ins. Co., 35 N. J. L.
366; Franklin v. Martin, 40 Id. 568; Busby v. Ins. Co., 40 Md.
572; Sheldon v. Ins. Co., 58 Am. Dec. 420; Loehner v. Ins. Co.,
17 Mo. 247; Bennecke v. Ins. Co. 105 U. S. 355; Thompson v. Ins.
Co., 104 Id. 252; New York v. Fletcher, 117 Id. 519; Smith v. Ins.
Co., 24 Pa. St. 320; Ryan v. Ins. Co., 41 Conn. 168; Wilson v.
Conwall, 4 R. I. 141.

An insurer may provide in the contract that certain acts or habits on the part of the insured will forfeit the entire contract. Supreme Council v. Curd., 111 Ill. 284; Aetna v. Darey, 123 U. S. 739; Hogins v. Supreme, 76 Cal. 109; Schultz v. Ins. Co., 6 Fed. 672; Northwestern v. Hazelett, 105 Ind. 212; Miller v. Ins. Co., 34 Ia. 222; Money due on life insurance policy is in no event payable until the surrender of the certificate. Britton v. Supreme, 18 Atl. 675; Bock v. A. O. U. W., 75 Ia. 462; Swett v. Relief, 78 Me. 541.

*Joe Kirby,* 🔷 respondents.

The wording of an insurance policy is to be most strongly construed against the insurer. Mutual v. Robertson, 59 Ill. 123; Garcelon v. Ins. Co., 50 Me. 580; Mouler v. Ins. Co., 111 U. S. 335; Woodruf v. Ins. Co., 83 N. Y. 133.

CORSON, P. J. This was an action by the heirs of Knud C. Kundson, deceased, to recover of defendants the sum of $2,000 insurance on the life of deceased. Judgment for plaintiffs, and defendants appeal. The defense to the action is based upon the alleged fact that in the application of said deceased and in his medical examination he made certain statements that constituted warranties, and that, these statements being untrue, the plaintiffs cannot recover. The defendant is a mutual benefit association having a number of subordinate councils, one of which, No. 94, is located at Sioux Falls, where the deceased resided at the time of his death. To entitle a person to the benefits of the association, he was required to become a member of a subordinate council. This membership was obtained by making an application to a subordinate council, which application, together with his medical examination and the certificate of the local medical examiner, was forwarded to the grand council, located at Marengo, Iowa, where, if the application was satisfactory, a certificate in the nature of a policy of insurance was issued. In April, 1892, the deceased made application for membership in the Sioux Falls council, the material parts of which application are as follows: "To the officers and

members of the Sioux Falls council, No. 94, N.W. L. of H., located at Sioux Falls, South Dakota. Having become acquainted with the objects of your order, I hereby make application for 2nd degree membership in your council, and to declare, upon my honor, that the statements by me subscribed herein are each and every one of them true, to the best of my knowledge and belief. And this application, when received by the grand council, and a benefit certificate therein is issued to me, is to be deemed a warranty by me that all answers and statements made by me upon the subjects herein specified are in all respects correct and true. * * * I am temperate in my habits. * * * I do hereby consent and agree that any untrue or fraudulent statements made above, or to the medical examiner, or any concealment of facts by me in this application, * * * shall forfeit the right of myself or family or dependents to all benefits or privileges therein. * * * This application is made and signed by me with the express stipulation and agreement, and upon the express condition on my part, that neither will I claim any benefit or privilege in your order, nor shall my beneficiary herein named, * * * unless all the statements herein made by me are true, nor, further, unless all answers given by me in my medical examination as to my physical condition and family history shall be strictly true, and my medical examination to be duly approved." On April 21st the deceased appeared before the medical examiner at Sioux Falls, and answered a large number of questions submitted to him, and among others were the following: "Have you had delirium tremens? No. Do you use alcohol or other stimulants? No. What has been your habit as to either through life? Temperate." To this examination the medical examiner annexed a certificate, and the same, with his application, was forwarded to the grand council, which, on May 11th issued to the deceased a certificate, the material parts of which are as follows: "This certificate is issued to Companion Knud C. Knudson, * *, * upon condition that the statements made by said companion in application for membership in said council, and the statements certified by said companion to the medical ex-

aminer, both of which are filed in the grand secretary's office, be made a part of this contract.  *  *  *  These conditions being complied with, the grand council of the Northwestern Legion of Honor hereby promises and binds itself to pay out of its benefit fund to Augustus Knudson (his wife) a sum not exceeding two thousand dollars in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said companion, and upon the surrender of this certificate." The jury found a general verdict, and also found special findings, as follows: "1. Was the deceased, Knud C. Knudson, ever intoxicated prior to the issuance of the penefit certificate introduced in evidence by the plaintiffs in this action, and described as benefit certificate No. 4,044? Ans. No. 2. Was the deceased, Knud C. Knudson, addicted to the use of alcoholic liquors prior to the issuance to him of said benefit certificate? Ans. Moderately. 3. Did the deceased, Knud C. Knudson, prior to the issuance of said benefit certificate to him, take a medical treatment commonly known as 'Dittmer Cure' for the drink habit? Ans. Yes. 4. Did the deceased, Knud C. Knudsou, at the time his application was made for the said benefit certificate, and at the time said benefit certificate was issued, improperly use alcoholic or other intoxicating liquors? Ans. No."

The appellant has assigned a large number of errors, but, in the view we take of this case, it will be only necessary to consider those relating to application, medical examination, and certificate issued, and the alleged breach of statements made in the application and medical examination. Three questions naturally present themselves for our consideration. First. Did the statements made by the deceased in his application and medical examination constitute warranties? Second. If they did constitute warranties do the special findings and uncontradicted evidence show that there was a breach of these warranties? Third. If the statements constituted warranties, and they were untrue, has the company in any manner waived such breach of warranty, or is it estopped from insisting upon such breach or breaches as a defense to this action?

Few questions have given rise to more discussion than the distinction between representations and warranties in insurance contracts. The inclination of courts in modern times seems to be to construe the statements made as representations, when the language used will admit of such a construction of the contract. But when the language used is free from ambiguity, and there is no question as to the application constituting a part of the contract, and the basis of the same, the statements will be construed as warranties and not representations. In the case before us there seems to be little room for construction. It will be noticed that by the terms of the certificate it is issued upon the condition that the statements made in the application and the statements made in the medical examination be made a part of the contract; and in the application it is stipulated that all answers and statements made upon the subjects therein specified are warranted to be true; and the appellant consents that any fraudulent or untrue statements made to the medical examiner should forfeit the right of himself and family to all benefits and privileges therein; and he further stipulates that neither he nor his family will claim any benefits, unless all statements made by him are true. Respondent's counsel insist that by the last clause of the application the stipulations as to his answers to the medical examiner are limited by the term, "physical condition and family history shall be strictly true," and that his habits as to being temperate are not included in this stipulation. If this was the only clause upon the subject, there would be much force in respondent's contention, but there are other stipulations that clearly embrace not only his statements as to his physical condition and family history, but his habits also, and in the application itself he stipulates that he is "temperate in his habits," and that any untrue statements made to the medical examiner shall forfeit his right to the benefits and privileges conferred. Besides, the questions propounded to the deceased as to whether he had ever had the delirium tremens most certainly refer to physical condition,—as much so as the questions as to any of the other diseases; and the question as to

whether he used alcohol or any other stimulants had reference to his physical condition, by a fair construction of the language used. Looking, therefore, to the application and medical examination, there can be no doubt that the statements made are to be regarded as warranties, and constitute a part of the contract of insurance.

There can be no reasonable doubt, from the special findings of the jury and the undisputed evidence, that these statements were untrue. The jury find that he did use alcoholic liquors "moderately"; that he had taken the "Dittmer Cure" for the drink habit; and the evidence of Dr. Stevenson is uncondradicted that early in the summer of 1892 the deceased admitted to him, while treating him for delirum tremens, that he had had the disease two or three times before, and that he had been addicted to the excessive use of alcoholic liquors. The warranties and breach being established, the law applicable to the case is too well settled to require discussion at this time. A breach of the warranty avoids the contract, and it makes no difference whether the statement warranted to be true was material or not, or whether the death of the deseased resulted by reason of a breach of the warranty. Mr. Bacon, in Benefit Associations & Life Insurance, lays down the rule as follows: "If the contract of life insurance therefore declares that the statements made in the application touching the subject of insurance are warranted to be true, and that the policy shall be void if they are untrue, the falsity of such statements will defeat the insurance. The parties having in their contract so agreed, and having been free to agree upon whatever terms and conditions they chose, the contract being a voluntary one, the courts have no other alternative than to give effect to the contract of the parties. The truth of the fact warranted is a condition precedent to recovery. It is immaterial that the applicant believed the statements to be true." Bac. Ben. Soc. section 197; Dwight v. Insurance Co., 103 N. Y. 341, 8 N. E. 654; Glendale Woolen Co. v. Protection Ins. Co., 21 Conn. 19; Gluting v. Insurance Co., (N. J. Sup.) 13 Atl. 4; Hunt v. Supreme Council (Mich.) 31 N. W. 576; Society v. White, 100 Pa. St. 12; Sweet v. Society, 78 Me. 541, 7 Atl. 394.

The learned counsel for the respondent, however, contends that, conceding that the statements made by deceased in his application and in his medical examination were warranties and were untrue, the respondent cannot avail itself of this defense for two reasons: First, because one Shields, to whom it is claimed the application was made, was the agent of the defendant, and had full knowledge that the deceased, at the time and prior to the application, was in the habit of indulging in the use of intoxicating liquors to excess; and second, because the habits of the defendant in the use of intoxicating liquors were generally known in the vicinity of Sioux Falls, where it is claimed the agent resided, and that the case comes, therefore, within the provisions of section 24, c. 51, Laws 1890, which reads as follows: "In all suits in any court of this state on policies of life insurance, wherein the defendant seeks to avoid liability upon the alleged ground of the intemperate habits or habitual intoxication of the assured, it shall be a sufficient reply for the plaintiff to show that such habits or habitual intoxication of the assured was generally known in the community or neighborhood where the agent of the defendant resided or did business, if thereafter the company continued to receive the premiums falling due on such policy." As to the powers and duties of Shields in connection with the defendant the record discloses but little. He seems to have been engaged in organizing the Sioux Falls council, and taking the applications of the original members and forwarding them to the home office, but he does not seem to have had any power to issue or countersign certificates issued to the members. These were issued by the officers of the grand council, after the applications had been approved by the local examining physician and the examiner in chief at the home office. Both of these gentlemen testify that they had no knowledge of the habits of the deceased, other than those described by his medical examination. The only evidence in the record as to Shields' knowledge of the habits of the deceased as to drinking is that of Mr. Mintzlaff, who had a meat market in Sioux Falls, and who says the deceased and Shields were in his shop. He

says: "I inquired about Knudson, what it was in regard to drinking, and Mr. Knudson was there, too, and he asked me, and I told him that I took the treatment and did not expect to drink any more; and I think that Knudson—he was not drinking at the time; but I think he was going to take the treatment, or was taking it; so Mr. Shields said it was all right; if he took the treatment, he could become a member." "Q. Then, as I understand you, it was stated to Shields at this time that Knudson had been drinking? A. Yes, sir." Subsequently Knudson made his application, and submitted to the medical examination. Nothing that Shields said to him authorized him to make untrue statements, which he appears to have made to the medical examiner, or that were made in his application. It was his duty, when called upon, to make true answers to the questions propounded to him. Had Shields been a general agent, authorized to issue certificates without consulting the home office, or had he made the application to the home office in his own name, and not submitted the application or medical examination of Knudson, undoubtedly his knowledge would have been the knowledge of the association, and it would have been bound by it. Or had Shields, as soliciting agent, —and that seems to have been substantially the position that he occupied,—in filling up an application, designedly or by accident written wrong answers to any of the questions, the association might have been estobbed from interposing the falsity of such answers as a defense; for as such soliciting agent, he would have the ostensible authority to fill up the application. But as a mere soliciting agent, his knowledge of the habits of Knudson would not bind the association against the express warranties of deceased. The contract of the parties was embodied in the application, medical examination, certificate, and by-laws of the association, and the previous conversations of the agent with the deceased, unless embodied in the contract, would not bind the defendant.

In Insurance Co. v. Mowry, 96 U. S. 544, the supreme court of the United States uses the following language: "All previous verbal arrangements were merged in the written agreement. The

understanding of the parties as to the amount of the insurance, the conditions upon which it sould be payable, and the premium to be paid, was there expressed, for the very purpose of avoiding any controversy or question respecting them. The entire engagements of the parties, with all the conditions upon which its fulfillment could be claimed, must be conclusively presumed to be there stated. If, by inadvertence or mistake, provisions other than those intended were inserted, or stipulated provisions were omitted, the parties could have had recourse for a correction of the agreement to a court of equity, which is competent to give all needful relief in such cases. But, until thus corrected, the policy must be taken as expressing the final understanding of the assured and of the insurance company." And Bacon says: "The law will not allow the terms of a written contract to be varied by parol evidence of what was said at the time it was negotiated. Written contracts must speak for themselves, and the language used cannot be varied or controled by parol evidence of what was said by the parties or their agents at the time the contract was negotiated. A written contract may sometimes be discharged, or one or more of its provisions waived, by a parol agreement, subsequently made, but never by what was said previous to or at the time it was made, except in a direct proceeding in equity to reform, rescind, or compel the specific performance of it; never in an action at law. This rule is applicable to insurance policies, as well as all other written contracts." Bac. Ben. Soc. section 464. Probably, under our system of practice, as before stated, it might be shown that, through accident or design of the agent, the answers of the deceased were not correctly given by the agent, or the diseased was informed that certain information that he detailed to the agent need not be stated, and where, in view of the statements of deceased, he was informed that a particular statement should be in the form given, and it proved to be in that form not literally true. But no case has been called to our attention in which prior conversations between the assured and the agent have been admitted to contradict the terms of the contract, or avoid the effect of warranties,

and their breach, entered into between the assured and the company subsequent to such conversations.

The second question presents more difficulty. The effect of the section above quoted has never been passed upon by this court. The plaintiffs, to bring the case within the provisions of this section, gave evidence tending, to prove that the habits of deceased as to indulging in the use of intoxicating liquors were known to people generally of Sioux Falls, and that, while his habits were thus generally known, the defendant accepted from him several assessments. Counsel for the appellant contend that this section does not apply to this case, for two reasons: First, because by section 51 of the same act it is provided as follows: "Any corporation or association doing business in this state which provides in the main for the payment of death losses or accident indemnity by any assessment upon its members or upon the mutual premium plan, shall for the purpose of this act be deemed a mutual benefit association, and shall not be subject to the general insurance laws of this state regulating life insurance." Second, because, by the terms of the section itself, it only applies to regular life insurance companies, as indicated by the term "policy"; and only applies to the usual clause in a policy that if the assured acquires the habit of the excessive use of intoxicating liquors after the policy is issued it shall become void, but cannot affect the question of warranties. We are inclined to agree with the contention of counsel. An examination of the chapter discloses the fact that it consist of two parts. The first 31 sections treat of life insurance companies proper,—the manner of their organization, powers, and liabilities, etc., and the last 23 sections treat of the manner of organizing, etc., assessment companies. The methods of organization, powers, duties, and liabilities are quite different in the two classes of companies. In the first class of companies, only "policies" are spoken of. In the second, the term "policies or certificates" is generally used. It would seem, therefore, that not only by the terms of section 24, in which the term "policy" only is used, but by the express provisions of section 51, the pro-

visons of section 24 are not applicable to mutual benefit societies. The omission of the term "certificate" is significant, and was evidently not an accident. The clause "agent of the defendant resides," is also significant, as in mutual assessment companies the subordinate lodge or council usually acts as the agent. Reading sections 24 and 51 together, we are of the opinion that section 24 has no application to mutual assessment associations of the character of the defendant association. But, if we are not correct in this position, we are clear that section 24 does not aid the plaintiff. The defendant does not seek "to avoid liability upon the alleged ground of the intemperate habits or habitual intoxication of the assured," but upon the ground that his statements made as warranties, and upon which the certificate was issued, were untrue, and consequently the contract was void. The law requires of the insured, as well as of the insurer, good faith in entering into the contract of insurance, and that all statements or representations on the part of the insured which he stipulates shall be regarded as warranties shall be substantially true, or, as stated in many of the authorities, literally true. And where a party makes statements to the medical examiner which he must have known were not true, and which it was his duty to state truly, a court can afford his heirs no aid in enforcing the contract. Our statute declares that "a breach of warranty without fraud, merely exonerates the insurer from the time that it occurs, or where it is broken in its inception, prevents the policy from attaching to the risk." Section 4164, Comp. Laws. Here, it was broken in its inception, and the policy never attached to the risk. It was void from the beginning. These conclusions lead to a reversal of the judgment, and the same is reversed.