IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

---

### JACKSON, APRIL TERM, 1904.

---

MURRAY *v.* SUPREME HIVE OF THE LADIES OF THE MAC-
CABEES OF THE WORLD.

### (*Jackson.* April Term, 1904.)

1. **EVIDENCE.** Strict rules relaxed as to age and pedigree.

    In matters of age and pedigree, the strict rules as to the intro-
    duction and admissibility of evidence, from necessity, do not
    apply. (*Post, p.* 680.)

2. **SAME.** Same. Inscriptions, engravings, public registers, and
    hearsay evidence generally, are admissible as to age and pedi-
    gree.

    In matters relating to age and pedigree, inscriptions on tomb-
    stones and on family portraits and charts, engravings in rings
    and hearsay evidence generally are admissible; and public reg-
    isters are competent evidence in this class of cases. (*Post, pp.*
    680-681.)

Murray v. Supreme Hive, L. O. T. M.

Cases cited: Lewis v. Marshall, 5 Pet., 470; Hunt v. Order, 64 Mich., 671; Jackson, ex dem. Bogert, v. King, 5 Cow., 237; Hennessy v. Met. Life (Conn.), 52 Atl., 490; Murray v. Sup. Lodge (Conn.), 52 Atl., 722; Sup. Conclave v. Saylor, (Miss.), 29 South., 790.

3. SAME. Same. Same. Census reports, records of boards of health, and applications for insurance, are admissible as to age. and pedigree.

Copies of the British census report, and of answers made to the United States census enumerator, records of boards of health, and applications for life insurance are admissible and competent as to age and pedigree. (*Post, pp.* 677, 678, 682.)

4. BENEFIT ASSOCIATIONS. Member waives previous irregularities by requesting a rehearing as to expulsion, when.

A member of a benefit association waives all previous irregularities in the matter of his expulsion therefrom, by requesting a rehearing, where the request is considered, and the former decree of expulsion allowed to stand upon the evidence adduced and procured. (*Post, p.* 681.)

5. SAME. What to be considered by the court in suit of expelled member to be reinstated.

Benefit associations must of necessity determine as to the competency and weight of evidence in expulsion proceedings in pursuance of their own rules, laws, and regulations, and where the expelled member institutes suit to be reinstated, the only question to be considered by the court is whether the laws of the association were enforced fairly and without oppression. (*Post, pp.* 679-682.)

Cases cited and approved: Vaughan v. Herndon, 91 Tenn., 64; Franta, etc., v. Union (Mo.), 63 S. W., 1100, 86 Am. St. Rep., 611; 54 L. R. A., 723; Mazurkiewicz v. Society (Mich.), 86 N. W., 543; 54 L. R. A., 727; Pepin v. Societe (R. I.), 54 Atl., 47, 60 L. R. A., 626; Moore v. National Council (Kan.), 70 Pac., 353; Doljanin v. Society (Cal.), 69 Pac., 908; Johansen v. Blume, 53 App. Div., 526, 65 N. Y. Sup., 987; Haebler v. Exchange, 149

N. Y., 414; Baxter v. McDonnell, 155 N. Y., 83; Lewis v. Wilson, 121 N. Y., 284.

6. **SAME.** Evidence on which member was expelled is admissible in suit for reinstatement, when.

Where the bill of an expelled member of a benefit association filed for the reinstatement charges that the association acted arbitrarily, unjustly, oppressively, and without any investigation or information upon the subject, such association can not be prevented in the courts from disproving this serious charge by marshaling the information upon which it acted, because of technical objections that could be raised to the mode of procedure prevailing in courts of law. (*Post, p.* 682.)

7. **SAME.** Repayment of premiums to expelled member tendered before and in suit for reinstatement not required upon decree denying reinstatement.

Where a member of a benefit association expelled for fraudulent representations declined a restoration of all premiums paid before suit for reinstatement, the decree denying reinstatement properly denies to order their repayment at the end of the litigation, though the bill tenders and offers to repay the same, if equity requires it. (*Post, pp.* 682-683.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County— F. H. HEISKELL, Chancellor.

RANDOLPH & RANDOLPH, for complainant.

F. ZIMMERMAN, for defendant.

Murray v. Supreme Hive, L. O. T. M.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an application on the part of complainant to be restored and reinstated in her position and in all her rights as a member of the defendant order, in which she holds an endowment certificate, which is made a part of her bill, and she asks that she be restored to all the rights to which she in entitled under said certificate. Defendant company defends upon the ground that, although she was once a member in good standing in said order, she has been expelled therefrom. The defendant claims that this action was taken in strict conformity with the by-laws, rules and regulations in force at the time complainant became a member thereof, and the ground for said expulsion is that complainant obtained her membership by false representations as to her age.

The complainant made application for membership on the twenty-first day of April, 1893, and in her application stated as follows: "My name in full is Mary Murray; I was born in the county of Longford, State of Ireland, on the twenty-seventh day of August, 1841, and am now 51 years old."

The application contains this clause: "I hereby declare that the above are fair and true answers to the foregoing questions: and I hereby agree that these statements, with this application, and the laws now in force or that may hereafter be adopted . . . shall form the basis of the contract for endowment; that any un-

true or fraudulent answers and suppressions of fact in regard to my health, age . . . personal or family history, shall vitiate my beneficiary certificate, and forfeit all payments made thereon."

Under the laws of the order as then existing, it is provided as follows: "All white females of good moral character, who have reached their sixteenth birthday and have not passed their fifty-sixth birthday, shall be entitled to admission as endowment members."

Her certificate recites that she has been regularly initiated a member of Chelsea Hive, No. 3, located at Memphis, Tennessee, and in case all the agreements and warranties made by her in her application are found to be true, and she continues to comply with the laws, rules, and regulations of the Supreme Hive L. O. T. M. of the World, which are now or may hereafter be in force, her beneficiaries, naming them, will be entitled to receive one assessment on the membership, not to exceed $2,000, upon satisfactory proof of the death of said member.

She continued to be a member until May, 1901. In 1900 the order became alarmed at the large death rate in the territory about Memphis, and required each member to fill out a new statement in writing regarding her age and other matters; the purpose being to determine whether a mistake had been made in the original statements, and, if so, to have them corrected.

Mrs. Murray in her own handwriting filled out one of these statements and signed the same, in which she stated that she was born August 27, 1842. In this doc-

ument she gave the birth of her four children as being in 1867, 1868, 1870, and 1871.

In her deposition afterwards she stated that her first child was born in 1863, the second two or three years thereafter, the third less than two years after the second and the fourth less than three years after the third.

Upon receiving this statement, the order, assuming that she did not know her age or had misstated it, ordered a personal investigation as to her case. This was authorized by the laws of the association, which provide that, if in case of an endowment member it shall at any time appear that false answers have been made to any of the questions propounded in the application, the person so answering may be proceeded against, and, upon conviction, may be expelled from all the rights, privileges, and benefits of the order.

A member of the Memphis bar in April, 1901, by order of the association, attempted to get an interview with Mrs. Murray in regard to this matter, but did not succeed. He, however, met her daughter, Mrs. Ryan, who was the beneficiary in the certificate, and stated his business to her. In May he made another attempt to interview Mrs. Murray, and again met Mrs. Ryan, who stated that she and her husband, Mr. Ryan, and her mother, Mrs. Murray, had consulted about the matter, and decided that Mrs. Murray would make no statement to the order, and would not be interviewed by any agent of the order. This action was reported to the supreme hive, together with information that Mrs. Murray had

probably misstated her age, and was beyond the age limit at the date of her application. Thereupon the board of trustees of the order sent a registered letter to Mrs. Mary Murray, Memphis, Tennessee, on May 27, 1901.

This letter was as follows:

"Port Huron, Michigan, May 27, 1901. "Mary Murray, Memphis, Tennessee:

"Dear Sister:

"At a meeting of the board of trustees of the supreme hive of the Ladies of the Maccabees of the World, held in the Maccabee Temple in the city of Port Huron, State of Michigan, on the ninth day of May, 1901, the charges of Dr. M. Danforth, supreme medical examiner, were laid before the board, wherein she charges Mary Murray, of Stella Hive No. 1, of Memphis, Tennessee, with having obtained her membership by false representation as to her age. After duly considering said charges, the following resolution was adopted:

" 'Resolved, That Mary Murray be suspended from all the rights and benefits of the order, and that she be served with a copy of the charges and specifications filed in this case, and that she may have until Thursday, the twenty-fifth of June, 1901, at the hour of 3 o'clock in the afternoon, at the Maccabee Temple, in the city of Port Huron, State of Michigan, (that being the time and place to which a hearing has been set in this case), in which to satisfy the board of the falsity of the charges made against her.

Murray v. Supreme Hive, L. O. T. M.

" 'Resolved further, That Mary Murray be instructed that she can appear either in person or by attorney, or make such showing by affidavit as she deems expedient at the said time and place.

" 'Resolved further, That Mary Murray be notified that this action is taken under the provisions of section 61 of the laws of the Supreme Hive, Ladies of the Maccabees of the World, as amended July, 1899, and that she may govern herself as provided in that section.'

"Fraternally yours,

"[Signed]                          BINA M. WEST,

"[Seal.]                          Supreme Record Keeper.

"This is to certify that the above is a true and correct copy of the action of the board of trustees of the Supreme Hive of the Ladies of the Maccabees of the World so far as relates to the matter herein mentioned.

"[Signed]                          BINA M. WEST,

"Supreme Record Keeper.

"Attest: Lillian M. Hollister, supreme commander."

Inclosed with this letter was the following document:

"State of Michigan, county of St. Clair—ss.:

"Dr. M. M. Danforth, being first duly sworn, deposes and says that she is a member in good standing of the Supreme Hive of the Ladies of the Maccabees of the World, and is its supreme medical examiner; that she files these charges against Mary Murray, of Stella Hive, No. 1, Memphis, Tennessee, under oath, and charges the said Mary Murray with having fraudulently obtained

her membership by misstating her age in her application for membership, in that in her application for membership she stated her age to be, at last birthday, fifty-one years, when in truth and in fact she was considerably older.

"DR. M. M. DANFORTH,

"Subscribed and sworn to before me, this ninth day of May, A. D. 1901.

"LEILA E. LANGFORD,

"Notary Public.

"[Seal.]      St. Clair County, Michigan."

The laws of the order further provide: "That all notices or papers . . . to be given to the members or hives shall be served by delivering such notice or paper to the person or hive intended personally, or by depositing the same in the post office, properly directed to such member or hive at her or its place of residence."

Section 61, to which reference is made above, is as follows:

"The board of trustees shall have power to suspend a life benefit member from all benefits of the order whenever a complaint is made, duly verified by . . . the supreme medical examiner, that such member has obtained her membership by false representation as to her age . . . Such suspension shall be binding on the member without a formal trial until the member has, by evidence, satisfied the board of trustees that such complaint has no foundation, which she must do within thirty days from the date of notice mailed her by

the supreme record keeper of the filing of such complaint. The findings and decisions of the board of trustees in all such cases shall be final. The board of trustees may reinstate a member so suspended, if at any time thereafter it may appear to the board that the cause of such suspension has been removed.''

See Laws 1899, section 61.

These laws were in existence at the time Mrs. Murray made her application for membership.

On the fifth of July, Mrs. Murray having made no appearance or defense, the following letter was sent to her:

"Port Huron, Michigan, July 5, 1901.
"Mary Murray, Memphis, Tennessee.:

"Dear Sister:

"At a meeting of the board of trustees of the Supreme Hive of the Ladies of the Maccabees of the World, held in Maccabee Temple, in the city of Port Huron, State of Michigan, on the twenty-fifth day of June, 1901, the matter of the case of Mary Murray of Stella Hive, Memphis, Tennessee, was presented, this being the time and place to which a hearing had been fixed, and the supreme record keeper produced the files, proofs and affidavits, and it still appearing to the board that the member had obtained her membership by untrue statements as to her age, it was, on motion,

''Resolved, That the suspension of Mary Murray be

made permanent and perpetual, and that she be expelled from all the rights and benefits of the order.

"Resolved further, That Mary Murray and the record keeper of Stella Hive No. 1, Memphis, Tenn., be notified accordingly.

"Fraternally yours,

"[Signed]                         BINA M. WEST,

"Supreme Record Keeper."

On the tenth of July, 1901, the attorney of the order at Memphis wrote the following letter to the attorney for the defendant:

"Memphis, Tennessee, July 10, 1901.

"Messrs. Randolph & Randolph, Attorneys, City:

"Gentlemen:

"I beg to acknowledge receipt of affidavit of A. J. White regarding the age of Mrs. Mary Murray. Also marriage certificate. In reply will say that an agent of the Maccabees called on Mrs. Murray prior to May 4 and requested a statement as to her age. She refused to admit him and refused to make any statement whatever. Thereupon Mrs. Murray was suspended on May 27, and notified that she might submit proof of her age either to the board at Port Huron or to the undersigned at Memphis, by June 25. She practically did nothing, but left the city; thereupon she was finally and forever suspended on July 5. While I will forward the affidavit of Mr. White, I may say that it is secondary evidence and can have no legal weight until it is shown that no primary evidence can be produced. The only

person I know of who could show that, is Mrs. Murray. If she will consent to make a fair statement, under oath to such questions as will be propounded to her, I may obtain a rehearing of the case; otherwise it is closed so far as I am concerned.

"Mrs. Murray's daughter states that her mother is quite feeble. If so there is greater reason that this matter should be attended to without delay.

"Respectfully,

"F. ZIMMERMANN."

On the nineteenth of July, Mrs. Murray and her daughter called on the representative of the order, and Mrs. Murray made a statement upon questions propounded to her, in the following words and figures:

"State of Tennessee, county of Shelby.

"Mrs. Mary Murray, a member of Stella Hive of the Ladies of the Maccabees, makes this affidavit at the request of the attorney representing the Supreme Hive of the Ladies of the Maccabees, and being duly sworn, says:

"My father's name was James Dolan, my mother's name Anna Dolan. I do not know her maiden name. I was about 5 or 6 years old at the time I left Ireland. My mother was dead at that time, but my father was alive, but he died a short time thereafter. I cannot tell the place where I was born. It may have been either the county of Longford or the county of Westmeath. I came to this country with some family, but I cannot remember the name. I cannot tell you in what year I

came over. I landed in the city of New York but stayed there only a short time, and went to Savannah, Georgia. I stayed there with a relation of my father, Mrs. Mackem, who was a half sister to my father. I stayed with her until I was big enough to go to work. I did not go to school there. I made my first communion in Savannah, Georgia, in a Catholic church there, but I do not remember the name. I do not know how long I worked in Savannah, Georgia.

"I came to Memphis either in the year 1859 or 1860, and was married in St. Peter's church, in Memphis, Tennessee, in the year 1861. I was at that time just past 19 years old. My eldest brother's name was John Dolan. He died in Memphis over thirty years ago. The eldest child of my parents was Bridget, who married one Scholly in Savannah, Georgia and died in Memphis about twelve years ago. She had two sons, but I do not know where they are. I was the third child of my parents. The next child after me was Peter Dolan, who is now living in Memphis. He is less than two years younger than I am. There were about three years between the births of the elder and about two years between the births of the younger of my parents' children. After Peter came my brother James Dolan, who was killed in Ireland. My youngest brother was Bernard Dolan. He died in Memphis about three years ago.

"I further declare upon oath that there is no writing in existence, so far as I know, which would show my ex-

act age. That I know of no person now living who could tell my exact age. And that I know of no person who could give me information in what place in Ireland I was born. To the best of my knowledge and belief I was born on Aug. 27, 1842.

"This affidavit is made under protest and only for the purpose of satisfying the order of the Ladies of the Macabees regarding my age, and at their request, and I am informed by Mr. Zimmermann, the attorney of the order, that under the laws of Tennessee any untrue statement in this conneection is an indictable offense. I have been a member of the order for many years, and I claim that the order is in possession of no fact authorizing or excusing my suspension, or the inquiry now being made as to my age.

"Subscribed and sworn to before me, a notary public in and for said county, this —— day of July, 1901, as witness my hand and seal of office at Memphis, Tennessee."

The order not being satisfied with this statement, proceeded to make further investigations, and became convinced, from record and other evidence, that Mrs. Murray was born in either 1835 or 1836, probably the latter year, and hence was beyond the age limit in 1893 when she joined the order.

These facts they obtained from thee records of the board of health at Memphis, from an application made by Mrs. Murray for membership in the order of Knights and Ladies of Honor in 1883, when she stated that she

was then 47 years old; from a copy of the British census report of 1841 relating to the family of her father, James Dolan, taken June 6, 1841, showing that Mary Dolan, afterwards Mary Murray, was then six years old; from a statement made by Peter Dolan, virtually under oath, to the effect that Mary Murray was born in 1835; he was her second cousin, her playmate, and about the same age; from a statement made to the United States census enumerator in 1880, placing her birth in 1836 or 1837.

Upon all this evidence the order refused to reinstate her.

It clearly appears from the record, and especially from the application made to the Knights and Ladies of Honor, and the British and American census reports, that Mrs. Murray could not have been mistaken or ignorant as to the age of herself and her several brothers and sisters.

It appears from her own application that she stated the age of her eldest brother then living as 53 years. She was several years older than he was, and yet she puts her age at 51 years, or two years younger.

Complainant excuses herself by saying that she did not know her correct age, but merely gave it to the best of her belief; and because she remained in the order for eight years, paid her dues regularly, and the order made no investigation, they should not now be allowed to do so.

We think that the legal question involved in this case

Murray v. Supreme Hive, L. O. T. M.

is whether the action of the order in expelling Mrs. Murray was so inequitable and unreasonable that a court of equity will not countenance it, but will restore her to her rights.

We think it evident from the record that Mrs. Murray did make a misrepresentation and misstatement of her age in her application, and that this misrepresentation and misstatement was knowingly and intentionally made in order to bring her within the age limit entitling her to membership in the order, to which she would not have been entitled nor admitted if the true facts had been stated.

In dealing with her case the order appears to have been governed by its own rules, 'laws, and regulations which were in force at the time Mrs. Murray made her application, and which in her application she agreed to conform to and be governed by.

We are of opinion that she had ample opportunity to explain the facts before the order, and to reinstate herself after her tentative expulsion.

The rule in such case is that the court will uphold the laws of the organization, and restrict its investigation to the inquiry as to whether such laws have been enforced fairly and without oppression. *Franta, etc.,* v. *Union* (Mo.), 63 S. W., 1100, 86 Am. St. Rep., 611, 54 L. R. A., 723; *Mazurkiewicz* v. *Soc.* (Mich.), 86 N. W., 543, 54 L. R. A., 727; *Pepin* v. *Societe* (R. I.), 54 Atl., 47, 60 L. R. A., 626; *Moore* v. *National Council* (Kan.), 70 Pac., 353; *Doljanin* v. *Austrian Benev. Soc.* (Cal.),

69 Pac., 908; *Johansen* v. *Blume,* 53 App. Div., 526, 65 N. Y. Supp., 987; *Haebler* v. *N. Y. Produce Exch.,* 149 N. Y., 414, 44 N. E., 87; *Baxter* v. *McDonnell,* 155 N. Y. 83, 49 N. E., 667, 40 L. R. A., 670; *Lewis* v. *Wilson,* 121 N. Y., 284, 24 N. E., 474.

It is objected that much of the evidence or information upon which the order acted was not legal evidence, and, therefore, should not have been admitted, and should not have formed the basis of an order of expulsion. This evidence complained of consists of the reports of boards of health and census reports.

The questions involved in these statements are questions of age and pedigree, and as to these the strict rules as to introduction and admissibility of evidence do not apply, and this from necessity.

In 1 Greenleaf on Evidence, section 104 *et seq.,* the question is fully discussed, and it is there stated that in matters relating to age and pedigree, inscriptions on tombstones and on family portraits and charts, engravings in rings, and hearsay evidence generally, are admissible; and public registers are competent evidence in this class of cases.

See, also, 22 Eng. Law (2 Ed.), 652; *Lewis* v. *Marshall,* 5 Pet., 470, 8 L.Ed., 195; *Hunt* v.*Order,* 64 Mich., 671, 31 N. W., 576, 8 Am. St. Rep., 855; *Jackson, ex dem., Bogert* v.*King,* 5 Cow., 237, 15 Am. Dec., 468; *Hennessy* v. *Met. Life* (Conn.), 52 Atl., 490; *Murray* v. *Sup. Lodge* (Conn.), 52 Atl., 722; *Sup. Conclave* v. *Saylor* (Miss.), 29 So. 790.

A number of cases are cited by complainant, but they appear to be cases where the order had disregarded its own laws in adjudicating the question, or had failed to give any notice whatever to the member proceeded against.

In the present case Mrs. Murray was given an opportunity to be heard according to the rules of the order, to which she had assented in her application; she hesitated to make any reply, and when she did make reply it was not satisfactory to the order, and was contradictory. Her request for a rehearing was considered, and she was expelled because of the evidence produced against her. By requesting this hearing, she waived previous irregularities, if any, and the only question for this court is whether the order was justified in refusing to set aside its former decree of expulsion on evidence, the weight and competency of which the order had a right to judge.

In the case of *Vaughan* v. *Herndon,* 91 Tenn., 64, 17 S. W., 793, the matter at issue had been decided by a committee of the Clarksville Tobacco Exchange against the plaintiff, who took the case into court insisting that the exchange had no right to reject the evidence he offered. The court held that the rejection upon reasonable grounds of evidence offered before the committee affords no just ground of complaint against the award. The committee must of necessity determine as to the competency and as to the weight of the evidence.

From the very nature of the case, the same strictness in proceeding and in applying the rules of evidence can-

not be required of those self-constituted tribunals as is required in courts of law. So the question is at last resolved into the inquiry whether the order has acted arbitrarily or unreasonably and upon evidence which was deemed satisfactory in a fair and reasonable investigation of the case.

It is certainly competent to show upon what information the order acted. The charge in the bill is that it acted arbitrarily, unjustly, oppressively and without any investigation of or information upon the subject. It cannot be prevented in the courts from disproving this serious allegation by marshaling the information upon which it acted, because of technical objections that could be raised to the mode of procedure prevailing in courts of law.

It was altogether proper, therefore, that the census reports of the United States and British governments, the records of the board of health of Memphis, the application to the Knights of Honor, the affidavit of Peter Dolan—all bearing upon the question of Mrs. Murray's age, and at a time and under circumstances when there was no inducement or reason for misrepresentation—should be considered by the order; and as before said, the only question is whether, upon the information it was able to get, the order acted arbitrarily.

The contract of insurance in this case provides that any fraudulent answers or suppressions of truth by Mrs. Murray as to her age, personal or family history, vitiates her beneficiary certificate and forfeits all premi-

ums paid thereon.    Before bringing this suit the order offered to refund to Mrs. Murray the premiums which she had paid in; but she declined to receive the same and sever her relationship with the order, but insisted upon being reinstated in all her rights as a member.    In the answer of the order filed in this case this fact is set out, and it is added:    "If your honor is of the opinion that equity requires the repayment of these amounts, defendant is ready and willing to pay them, and hereby tenders and offers to pay them into court."

We are of opinion that equity and good conscience does not require the repayment of these premiums after the end of this litigation.    Complainant was given the option to receive them back, even though found guilty of misrepresentation, and she declined to do so, but compelled this litigation and expense of a suit to the company, and we are of opinion the chancellor was correct in refusing to order their repayment, and his decree is affirmed, with costs.