**Howard J. COKE, Plaintiff-Appellant,**

v.

**UNITED TRANSPORTATION UNION, Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section.

April 1, 1977.

W. Gary Blackburn, Ortale, Kelley, Herbert & Crawford, Nashville, for plaintiff-appellant.

Metzenbaum, Gaines & Stern Co., L.P.A. by Norton N. Newborn, Cleveland, Ohio, Barrett, Brandt & Barrett by George E. Barrett, Nashville, Robert Hart, United Transp. Union, Cleveland, Ohio, for defendant-appellee.

## OPINION

TODD, Judge.

The plaintiff, Howard J. Coke, has appealed from a summary judgment of dismissal of his suit for damages for being deprived of the financial benefits of his union office.

On September 30, 1968, plaintiff was elected by the Brotherhood of Railroad Trainmen a member of the Board of Appeals, Southern Territory, for a period of four years.

On January 1, 1969, the Brotherhood of Railroad Trainmen merged with other unions to form the United Transportation Union, the defendant herein.

The "Unification Agreement" under which said merger took place contained the following provisions:

*SECTION 4.* (a) The first officers of the United Transportation Union shall be as follows:

.        .        .        .        .

Board of Appeals: Yardman/switchmen: The incumbent members of the Board of Directors, Switchmen's Union of North America, and two (2) members of the Board of Appeals, yardmen if available, Brotherhood of Railroad Trainmen . . ."

.        .        .        .        .

*SECTION 6.* (a) The purpose of this Section is to provide for the protection of defined officers of the Order of Railway Conductors and Brakemen, Brotherhood of Locomotive Firemen and Enginemen, Brotherhood of Railroad Trainmen and Switchmen's Union of North America, herein referred to as the organizations and to expedite the changes in the service, facilities and operations involved in the unification of the organizations.

(b) For the purpose of this Section, the term 'officer' is defined to mean all Grand Division officers of the Order of Railway Conductors and Brakemen, all Grand Lodge officers of the Brotherhood of Locomotive Firemen and Enginemen and the Brotherhood of Railroad Trainmen . . .

.    .    .    .    .

" . . . None of the first officers, as identified in Section 4(a) of this Unification Agreement, shall be deprived of employment or placed in a worse position with respect to salary, vacation, health and welfare benefits, or rights and privileges pertaining thereto as a result of the unification. . . ."

.    .    .    .    .

*SECTION 12.* . . . .

" . . . Any decision, with respect to the interpretation or application of any of the provisions of this Unification Agreement, may be appealed to the Disputes Committee. . . .

.    .    .    .    .

"Appeals must be timely submitted to the General Secretary and Treasurer of the United Transportation Union, with a statement of all relevant facts and circumstances. Copies of the appeal and reply to the appeal must be exchanged by the opposing party or parties.

"The President shall convene the Disputes Committee to consider the appeal within sixty (60) days from receipt thereof and in the event the Committee fails to reach a decision or is unable to reach a decision within ten (10) days from the date the Committee completes hearing on the appeal, the neutral referee shall sit with the Committee and render a decision. Decision of the Committee shall be final and binding on the parties.

"The parties involved in a dispute shall be notified when the appeal is to be heard and they may appear before the Committee and present oral testimony and evidence in support of their position provided notice of such intention is given."

Thereafter, plaintiff was assigned by the president of the new union to the Board of Appeals, Yardmen/switchmen, which decided disputes different from those decided by the Board of Appeals of the former Brotherhood of Railroad Trainmen, and said new Board received fewer disputes to decide, hence was in session fewer days and plaintiff therefore received less compensation than he had received as a member of the former board.

Plaintiff requested assignment to the former board, but was refused.

On October 29, 1971, plaintiff filed a claim with the union president for $68,-000.00 in lost pay and benefits.

On December 1, 1971, plaintiff's claim was declined by the president.

On January 15, 1972, plaintiff filed with the secretary-treasurer of the union an appeal to the "Disputes Committee" provided by the unification agreement and the constitution of the new union.

Thereafter, the president of the union declined to call the "Disputes Committee" into session to hear the appeal.

On June 8, 1975, plaintiff filed this suit against the union demanding judgment of $100,000.00.

As stated, the Chancellor entered a summary judgment of dismissal from which plaintiff has appealed.

The memorandum opinion of the Chancellor states:

"Where remedies are exhausted, the Court may intervene with internal procedures if the union's own procedures have not been followed or the union and its officers act in an otherwise arbitrary, oppressive or unlawful manner. . . .

.    .    .    .    .

"There is not in the record a showing of arbitrary, capricious, oppressive or illegal action by the union either in the appointment of plaintiff to the 'YIS' Board or in refusing to hear the claim. The evidence indicates some political favoritism was in play in the union, and, apparently, plaintiff fell from favor. However, the actions of defendant's pres-

ident were based on sound reasoning and considerations of the union's best interest. The refusal by the General Secretary to refer the Appeal to the Dispute Board is the crucial issue in dispute; the refusal was based on defendant's interpretation of Section 12 of the Unification Agreement and its requirement for timely filing.

"The Court has jurisdiction if the defendant failed to comply with its own regulations and procedures even absent arbitrary action by the defendant denying access to the Dispute Board. However, in cases parallel to the instant case, the Ohio Courts have relied upon the interpretation of the union's regulations by the union's officers absent a showing the interpretation was prompted by fraudulent, arbitrary, oppressive intent or bad faith. . . .

.   .   .   .   .

"Under Ohio law, the Court is bound by the union's interpretations of its constitution, regulations and by-laws absent a showing that the interpretation is arbitrary, capricious, oppressive, illegal or in bad faith. The interpretation of Section 12 of the Unification Agreement to require timely filing with the dispute Board is not on its face arbitrary. The evidence does not show the union's interpretation is prompted by prohibited motivations. It is not arbitrary, capricious, oppressive or illegal; it is binding on the parties.

"The Court can guarantee to plaintiff only compliance by the union with its own rules and regulations. As interprett ed in good faith by the union, plaintiff forfeited his appeal to the Dispute Board by untimely filing of a claim. Applying Ohio law, the Court cannot intervene in the internal dispute absent a showing of arbitrary, capricious, oppressive action by the union."

In *International Union of Steam and Operating Engineers v. Owens*, (1928), 119 Ohio 94, 162 N.E. 386, the union denied a transfer card to plaintiff, whereby he was deprived of access to employment. The Ohio Court held that plaintiff had been accorded due access to all of the tribunals of the union, that the decisions of such tribunals were reasonably within the provisions of the union charter and by-laws, hence plaintiff was without judicial remedy. However, the Ohio Court said:

"If no hearing has been accorded to Owen, he is entitled to have it, but the courts do not guarantee more than that." 162 N.E. 384 at page 388.

■ As stated in the Chancellor's opinion, the courts may intervene where the union's own procedures have not been followed or the union and/or its officers act in an otherwise arbitrary, oppressive or unlawful manner. In *Hennekes v. Maupin* (1963), 119 Ohio App. 9, 192 N.E.2d 204, and *Boblitt et al. v. Cleveland, Cincinnati and St. L. Ry. Co.* (1943), 73 Ohio App. 339, 56 N.E.2d 348, the defendants-unions were dismissed, but the Ohio Court recognized the principle just stated.

The same principle is also recognized in the Tennessee cases of *Tennessee Secondary School Athletic Association v. Cox*, 221 Tenn. 164, 425 S.W.2d 597 (1967), and *Murray v. Supreme Hive L.O.T.M.*, 112 Tenn. 664, 80 S.W. 827 (1904).

The Chancellor held, supra, that the General Secretary of the union acted reasonably within the constitution and by-laws of the union in refusing to refer plaintiff's appeal to the Appeal and Dispute Board.

The Chancellor was of the opinion that the General Secretary and Treasurer was empowered to interpret the word "timely" and to refuse access to the Disputes Committee in respect to any appeal which he, in his sole judgment, considered untimely.

■ This Court respectfully disagrees with the Chancellor's position just stated.

The clear intent of Section 12 was to assure members of the various unions being abolished by merger that they would have access to a Disputes Committee to correct erroneous rulings of the officers of the new union. When plaintiff's claim for compensation was denied by the president, the Unification Agreement guaranteed plaintiff the unquestioned right of appeal to the

Disputes Committee. When his right of appeal was denied by the general secretary, the president, or any other union officer, the Unification Agreement was violated.

The sense of Section 12 is that all rulings of officers (in respect to rights under the unification agreement) will be subject to review by the Disputes Committee. The Unification Agreement contains no suggestion that any officer would have the power to deny access to the Disputes Committee. The decision to deny access to the Committee (because of the untimeliness of an appeal) is clearly subject to review by the Committee, if not actually reserved to the Committee.

Therefore, in the judgment of this Court, the decisions to deny access to the Dispute Board and refusal of the president to call the Dispute Board in session were not authorized by the Unification Agreement. The decision as to the timeliness of the appeal was for the Committee, not the General Secretary.

As conceded in the Union's brief, the choice between Ohio law and Tennessee law is not determinative. The determinative question is whether plaintiff has been accorded his rights under applicable Union laws (the Unification Agreement). In the view of this Court, under the record on appeal, plaintiff has been denied his right of access to the Disputes Committee, and is entitled to relief in the Courts.

The brief of the Union insists that plaintiff delayed three years in protesting his placement and resultant loss of pay. According to the record, the merger was accomplished on January 1, 1969. Plaintiff's reassignment perforce occurred some time thereafter. His claim for compensation was filed with the Union president on October 29, 1971, two years and ten months (not three Years) after the merger; but it is not the untimeliness of his *claim* which might bar his *appeal,* but the untimeliness of his appeal.

The president disapproved plaintiff's claim on December 1, 1971. The appeal was filed on January 15, 1972, 45 days after the president's decision.

Plaintiff insists, and there is evidence to show that plaintiff's delay of two years and 10 months in presenting a claim was excused by assurances from union officers that his work would increase with passage of time. Nevertheless, the delay in presenting the claim was merely an element to be considered on appeal, and not grounds for refusing appeal.

■ The delay of two years and ten months in presenting a claim and the delay of 45 days in filing an appeal certainly were not unreasonable as a matter of law; and, if deemed unreasonable as a matter of interpretation of union law, the issue should have been decided on appeal by the Disputes Committee as provided by the Unification Agreement.

As noted above, the Chancellor's opinion makes reference to the reasonableness of the work assignment given to plaintiff. This is an issue which should not be decided by summary judgment, but by consideration of all the evidence. Moreover, this issue has not been considered by the president or the Dispute Committee.

The violation of a right assured by the Unification Agreement renders immaterial any questions of motives or arbitrariness. The union member has been refused that decision-making process assured to him by the union law (Unification Agreement), therefore he is entitled to pursue his remedies in the courts.

The summary judgment of dismissal is reversed. The cause is remanded for trial on the merits.

Reversed and Remanded.

SHRIVER, P. J., and DROWOTA, J., concur.