IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2006 Session

## WILLIAM A. COHN v. MICHAEL T. BAKER, ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-05-1179      The Honorable Walter Evans, Judge**

_____

**No. W2006-00723-COA-R3-CV - Filed October 2, 2006**

_____

This case arises from the termination of Appellant's membership in a private country club. Appellant asserts a proprietary interest in the assets of the club, and seeks to have his membership reinstated. The trial court granted summary judgment in favor of the club/Appellee and Appellant appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Jerry R. Givens of Cordova, Tennessee for Appellant, William A. Cohn

Taylor A. Cates of Memphis, Tennessee for Appellees, Michael T. Baker, Harvey Carter, Germantown Country Club, and Farmington Country Club

**OPINION**

On June 16, 2005, the Germantown County Club (the "Club") terminated the membership of William A. Cohn ("Plaintiff," or "Appellant"). The Club was formerly known as Farmington Country Club. Farmington County Club ("Old Farmington") was originally formed as a non-profit corporation in 1970. In 1983, Old Farmington was administratively dissolved by the State. Thereafter, in 1993, a new entity, also named Farmington Country Club ("New Farmington"), was formed. New Farmington has a different reference number with the Secretary of State and is, in fact, a new and separate entity from Old Farmington. In 1996, the owners of New Farmington sold the club and its corporate entity to Mr. Kenneth Anderson. In connection with the sale, the former owners provided Mr. Anderson with the operative By-Laws of the corporation. From the record, it appears that the Old Farmington By-Laws had been replaced with new By-Laws around the time that New Farmington was established. The By-Laws of New Farmington differ in many aspects from those of Old Farmington.

Concerning membership, the Old Farmington By-Laws read, in pertinent part:

> A certificate of membership shall be issued to each and every Regular Resident Member of the Club...and such certificate shall entitle the holder to all the privileges of the Club, and to the right of ownership in its properties and assets, subject to all the provisions of the Charter, By-Laws and Rules and all Amendments thereto.

The New Farmington By-Laws concerning classes of membership and members reads, in relevant part:

> A certificate of membership shall be issued to each and every Member of the Club...and such certificate shall entitle the holder to the applicable privileges of the Club, subject to all the provisions of the Charter, By-Laws and Rules and all Amendments thereto....

New Farmington's By-Laws establish three classes of members: Charter Members, Regular Resident Members, and Associate Members. The By-Laws provide that Charter Members "shall be the only class of members entitled to vote on any and all Club matters." The original Charter Members of New Farmington were Lloyd B. Lovitt, Jr., Albert M. Austin, and the Boyle Investment Group. When Mr. Anderson purchased New Farmington, he paid the purchase price to these Charter Members. Since Mr. Anderson purchased the Club, the three Charter Members have been Mr. Anderson, his wife, Mary Charles Anderson, and Michael T. Baker. These three individuals also comprise the Board of Directors of the Club. The day-to-day director of the Club is Mr. Harvey Carter (together with Mr. Michael T. Baker, New Farmington, and the Club, "Defendants," or "Appellees").

Mr. Cohn joined the Club in 1992 as a Regular Resident Member thereof. It appears from the record that, at the time he joined the Club, Mr. Cohn was given a copy of the Old Farmington By-Laws, along with a certificate of membership.

In 1999, the Club hired Natalie Clark, a female tennis professional. Following Ms. Clark's employment, Mr. Cohn began to express displeasure with the number and type of men's tennis activities scheduled at the Club. Mr. Cohn's displeasure with the men's tennis program, and specifically with Ms. Clark, came to a head in early 2005 when he began a letter-writing campaign. On February 3, 2005, Mr. Cohn sent a letter to the Club complaining about the alleged limited number of men's tennis activities. The February 3, 2005 letter reads, in pertinent part:

> I see a take it or leave it attitude in the tennis department, which really has not changed in the 10 or so years that I have been a member. I see no responsiveness to the wants of the tennis playing membership, particularly the male membership. I see no communication with the

male members. They are, in point of fact, in large part, the ones who pay the bills.

On April 6, 2005, Mr. Cohn sent another letter to the Club requesting that his class of membership be changed. In this letter, Mr. Cohn states: "Please advise me when you hire a male tennis pro and set up a men's leagues. I am not interested in tennis tea parties."

On April 29, 2005, a Club employee left a message with Mr. Cohn's office requesting that he turn off the tennis court lights after his matches. This request sparked another letter from Mr. Cohn, which was sent on or about April 29, 2005, and reads, in pertinent part, as follows:

> Someone from Germantown County Club called my office today and, without identifying themselves, left a message to "turn out the lights at the tennis courts."
>
> *                                    *                               *
>
>  ... It is your tennis pro's responsibility, and not mine, to maintain the tennis courts. I have been a member since 1992, and have... helped your tennis program in many ways–free of charge, not at my usual rate of $250.00 per hour.
>
> I do also know that your tennis pro has acted in a condescending manner to me, which is unusual for someone who receives money that I pay and has only a limited education.

Another letter followed on June 14, 2005. This letter, addressed to Messrs. Carter and Baker, reads, in relevant part, as follows:

> I was invited to play tennis last night in a foursome at Germantown Country Club. I was not the organizer, and when I arrived (last) there was one other club member and 2 non members. The organizer was a club member who could not attend and obtained a substitute for himself.
>
> During the play, your tennis pro came over and interrupted our play so that she "could determine who to charge for the guest members." I immediately volunteered to pay.
>
> Besides being extremely rude by interrupting play and a pending match (she interrupted play on Sunday also when I was playing singles with a GCC member), the tennis pro offered no alternative to register the guests as she had no one in the clubhouse to check in. In

-3-

point of fact, she never has anyone at night in the clubhouse check in. Her conduct therefore is deplorable.

    \*            \*          \*

I am disappointed that I have received no response to my previous letters. Good management tries to investigate when a complaint is received and see if it can be resolved amicably.

I am willing to sit down and discuss with you. It costs us nothing. You have some serious problems. Items which you had before Natalie, and which you do not have: holiday tournaments; leagues (I ran some myself); calcuttas; a club championship; a tennis committee to help steer and plan events. Now all you have is women driven events and periodic mixed doubles socials (tea parties). The membership knows this and those that do not are being apprised of it.

    \*            \*          \*

We can sit down amicably (without Natalie) and discuss this. Or we can let the lawyers explore these issues with a judge. That could cost a lot of money. But it is certainly an alternative. I have no qualms about seeking a protective injunction against Natalie if she continues to harass me.

On the same day, Mr. Cohn wrote an e-mail message to thirty-one male members of the Club. The correspondence reads, in pertinent part, as follows:

GENTLEMEN:

Don't forget Tennis TONIGH[T] at 7:30 pm at Germantown Country Club. Let's get out as many people as we can.

We also need to demonstrate to the Club management that the men are interested in tennis. Unfortunately, since Natalie has been there, the men's tennis has gone down the tubes.

*We need to send a message* that we want a Male pro with autonomy, who is going to schedule leagues and tournaments for men and not just schedule 1) clinics so she can make money and 2) tea parties; and that it is acceptable that Natalie have nothing to do with tennis in any way that affects the men, who, after all, do pay the bills at the Club. In point of fact, it's ok with me if she is replaced.

-4-

> Did you know that before Natalie came, we had a Club Championship? That we had Calcuttas and holiday tournaments for tennis? That we had leagues for the men? Now we have tea parties and nothing but mixed doubles. You decide which one you want. You are paying the dues.

(Emphasis in original).

Mr. Cohn sent separate e-mails later that day to two members. Mr. Cohn informed one member that Mr. Cohn "will work continuously to see that Natalie is fired." Mr. Cohn informed the other member that Mr. Cohn intended "to devote considerable effort to pressuring the Club to obtain a new tennis pro."

The day following Mr. Cohn's e-mail exchange with numerous Club members, Messers. Anderson and Baker determined that Mr. Cohn's conduct could no longer be tolerated. Consequently, they directed Mr. Harvey Carter to send Mr. Cohn a letter terminating his Club membership. The termination letter reads, in relevant part, as follows:

> It is in the best interest of Germantown Country Club and its' membership, effective this date, June 16, 2005, that your Tennis Membership #4108 in Germantown Country Club and any future privileges as the guest of a member of Germantown Country Club are terminated.

Thereafter, the Board of Directors of the Club met and executed documentation to confirm Mr. Cohn's expulsion. This document, entitled "Actions Taken by Written Consent of The Board of Directors of Germantown Country Club," is dated June 15, 2006 and reads, in pertinent part, as follows:

> WHEREAS, after inquiry and consultation with employees of the Club and review of certain documents, the Directors have determined that William A. Cohn has engaged in conduct unbecoming a gentleman and that it is in the best interest of Germantown Country Club, a Tennessee nonprofit corporation, and its members, to suspend William A. Cohn as a Tennis Member of the Club and recommend his expulsion from the Club to the Charter Members...

After receiving the expulsion letter, Mr. Cohn sent the Club management a letter, dated June 19, 2005, in which he demands compensation in the amount of $94,050.00 for his services as a "de facto tennis administrator."

On June 20, 2006, Mr. Cohn sent another letter to the Club. This letter reads, in relevant part, as follows:

> I have reviewed the By Laws and documentation presented to me upon my joining what was originally Farmington Country Club and later changed to Germantown Country Club.
>
> Nothing has been presented to Club members which would be interpreted as an asset only sale. Thus, it appears that the only thing that changed was the Club ownership.
>
> Further, no notice has been sent to Club members of the change in terms. Therefore, the same terms apply as previously. Clearly, the previous terms have been ratified.
>
> According to these documents, I purchased an asset, not a contract.
>
> It appears that you have no authority to attempt the conduct that you have commenced.
>
> If you have other documentation that was forwarded to club members, or that you failed to forward to club members, please provide it immediately.
>
> Otherwise, get your check book out boys. I'll see you in Chancery AND Circuit Court.

On June 24, 2005, Mr. Cohn filed the present action in the Shelby County Chancery Court.[1] In his Complaint against Messrs. Carter and Baker and the Club, Mr. Cohn seeks, *inter alia*, the following relief: (1) a declaratory judgment that Mr. Cohn "continues to possess an ownership interest" in the Club; (2) a temporary and/or permanent injunction preventing the Defendants from enforcing termination of Mr. Cohn's membership in the Club; (3) an accounting of the Club's assets; (4) a partition sale of the Club; and (5) compensatory damages.

On July 20, 2004, a hearing was held before the Shelby County Clerk & Master sitting as Special Chancellor on Mr. Cohn's motion for temporary injunction. Following the hearing, the court denied Mr. Cohn's motion, finding that Mr. Cohn had demonstrated no proof of irreparable harm.

On August 22, 2005, the Club moved to dismiss Mr. Cohn's Complaint pursuant to Tenn. R. Civ. P. 12.02(6). Specifically, the Club asserts that it "properly terminated Mr. Cohn's membership," and that the trial court "should not intervene in the internal affairs of a private,

---

[1] Mr. Cohn also filed a suit in the Circuit Court at Shelby County seeking to recover $94,050.00 on a *quantum meruit* basis for his alleged services as "de facto tennis administrator." The circuit court suit was non-suited.

voluntary association." On August 25, 2005, Mr. Cohn filed three separate motions for summary judgment on the following grounds: (1) "on the issue of the existence and validity of contract and terms of contract between the parties;" (2) "on the issue of sufficiency of grounds and evidence to support letter of termination;" and (3) "on the issue of whether plaintiff possesses an ownership interest in the personal property of the defendant corporations." On September 21, 2005, the Defendants filed a pleading adding an alternate motion for summary judgment to the initial Tenn. R. Civ. P. 12.02(6) motion. Mr. Cohn filed his response to the motion to dismiss on September 15, 2005.

On March 6, 2006, the Defendants filed a "Memorandum in Opposition to Plaintiff's Cross-Motions for Summary Judgment." On March 9, 2006, Mr. Cohn filed his "Supplemental Memorandum in Support of Plaintiff's Motions for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment."

On March 13, 2006, the trial court heard oral argument on the cross-motions for summary judgment. On March 17, 2006, the trial court entered its Order, denying Mr. Cohn's motions for summary judgment and granting the Defendants' motion for summary judgment. Mr. Cohn appeals and raises three issues for review as stated in his brief:

> I. Whether a contract exists and what are the terms of the contract.
>
> II. Whether the Plaintiff/Appellant possesses an ownership interest in the personal property of the Defendant corporation and whether he was divested of that property.
>
> III. Whether sufficient grounds and sufficient evidence existed to support the termination of the contract of membership between the parties.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists*. See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set

forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's denial of summary judgment is de novo on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

Based upon the portion of the Old Farmington By-Laws that states that a certificate of membership "shall entitle the holder to ... the right of ownership in its properties and assets...," *see supra*, Mr. Cohn asserts that he has an ownership interest in the Club. As discussed above, Old Farmington was administratively dissolved in 1983. New Farmington was not established until 1993. Consequently, when Mr. Cohn joined in 1992, he, in effect, joined a defunct club. Although the By-Laws given to him–those of Old Farmington–may have given him ownership interest in Old Farmington, upon the dissolution of that organization, those By-Laws ceased to have effect in regards to New Farmington, which, as set out above, was organized in 1993 under new By-Laws and as a distinct and separate entity from Old Farmington. Consequently, any dispute that Mr. Cohn has concerning the By-Law upon which he relies (those of Old Farmington) would be a dispute with the now-defunct organization. At any rate, Germantown Country Club, New Farmington, and Messrs. Baker and Carter are not proper defendants to any ownership action by Mr. Cohn. Mr. Cohn's ownership action is, therefore, void as against these defendants, and summary judgment was proper as to this portion of Mr. Cohn's Complaint. We now turn to the question of whether the Club properly terminated Mr. Cohn's membership.

Courts will generally not interfere with the internal affairs of private, voluntary associations. *Original Lawrence County Farm Organization, Inc. v. Tenn. Farm Bureau Federation*, 907 S.W.2d 419, 421 (Tenn. Ct. App.1995); *Moran v. Vincent*, 588 S.W.2d 867, 870 (Tenn. Ct. App.1979). Courts may intervene only where the association's procedures have not been followed or where the association otherwise acts in an arbitrary, oppressive or unlawful manner. *Coke v. United Transportation Union*, 552 S.W.2d 402, 405 (Tenn. Ct. App.1977). In the instant case, Article III, Section 3 of the By-Laws of New Farmington, under which that organization was operating, read as follows concerning termination of memberships:

> Should any differences arise between members, or acts of disorder occur in the Club, or any member be guilty, there or elsewhere, of conduct unbecoming a gentleman, it shall be the duty of the Board or its designee to make inquiry into the same, and if it deems the offense or the violation of the rules sufficiently grave, and sufficiently proved, it may, by a vote of two-thirds of the Board, or a committee so appointed by the Board, suspend the member so offending, and

-8-

recommend his expulsion to a special or annual meeting of the Club, and he may be expelled by a majority of votes at such meeting.

Article VII of the New Farmington By-Laws addresses expulsions as follows:

SECTION 1. Any member of the Club for repeated violations of any of the By-Laws or Rules of the Club, and amendments thereto, or for any misconduct deemed sufficient, may be fined and/or suspended by a vote of two-thirds of the Board of Directors and may be expelled as provided for in Article III, Section 3 of the By-Laws.

According to its By-Laws, the Charter Members, who also comprise the Board of Directors, are the only individuals authorized to determine whether, and on what grounds, to suspend and/or terminate a membership. In the instant case, the record indicates that the Board of Directors reviewed all of Mr. Cohn's correspondence, along with the correspondence of other members written in support of Ms. Clark and the tennis program, and determined that Mr. Cohn's actions were sexists, disruptive to the goals and expectations of the Club, and constituted "conduct unbecoming a gentleman." Following its review, the Board of Directors, in compliance with the New Farmington By-Laws suspended Mr. Cohn's membership and later terminated same following a board meeting. While we concede that the Board's determination of what constitutes ungentlemanly behavior is a subjective inquiry, it is not within the purview of this Court to second-guess the Board's determination unless the Board acted contrary to its own policy or in an arbitrary or capricious manner. *Coke v. United Transportation Union*, 552 S.W.2d 402, 405 (Tenn. Ct. App.1977). There is nothing in this record to support a finding that the GCC Board of Directors acted outside the scope of the procedures outlined in its By-Laws or that the Board overstepped its authority as set out therein.

For the foregoing reasons, we affirm the Order of the trial court. Appellees' request to find this a frivolous appeal is denied. Costs of the appeal are assessed to the Appellant, William A. Cohn, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.